In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-2646

LORENZO LOPEZ, on behalf
of Roberta Lopez, deceased,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CV 1426—**Robert W. Gettleman**, *Judge.*

ARGUED JANUARY 28, 2003—DECIDED JULY 9, 2003

Before ROVNER, EVANS, and WILLIAMS, *Circuit Judges.*

PER CURIAM. Roberta Lopez applied for disability bene-
fits, claiming initially that she could not work because
severe pain in her left shoulder and hand had resulted in
loss of use of that hand. The Social Security Administra-
tion ("SSA") denied her application, and while the matter
was before an administrative law judge ("ALJ") Mrs. Lopez
expanded her claim to include additional allegations of
right-hand impairment. The ALJ, however, concluded that
she was not disabled because, according to the ALJ, she
retained use of her right hand despite loss of functioning

in her left. The ALJ's decision became the final decision of the Commissioner of Social Security when the SSA's Appeals Council denied review. Mrs. Lopez then sought review in the district court, which upheld the ALJ's decision. After Mrs. Lopez's death in April 2002, her husband, Lorenzo Lopez, brought this appeal on her behalf. Because we conclude that the ALJ failed to articulate a legitimate reason for disregarding medical evidence of right-hand impairment that supported Mrs. Lopez's claim of disability, we vacate the district court's judgment upholding the Commissioner's decision and remand to the SSA for further proceedings.

Mrs. Lopez first complained of pain in her left shoulder in 1995. Her doctor concluded that the pain was due to compression, inflammation, or injury to her spine and treated her with traction and physical therapy. After six weeks of physical therapy, Mrs. Lopez stated that she no longer had pain in her shoulder. She was directed to continue exercises at home.

Mrs. Lopez began to experience pain again—this time in her left shoulder, wrist, and hand—in 1996. Mrs. Lopez's physician diagnosed her with carpal tunnel syndrome in her left hand. The physician treated her with conservative management, including physical therapy and pain medication. This treatment continued for several months without relief, and in February 1997 Mrs. Lopez underwent carpal tunnel release surgery on her left wrist, followed by therapy for her left wrist and hand. After this therapy concluded in May 1997, Mrs. Lopez's therapist noted that she showed only minimal improvement in left-hand grip and pinch strength and continued to report that when engaged in any activity or lifting she experienced pain in her left hand that subsided with rest.

Mrs. Lopez applied for disability benefits in 1998, claiming an onset of disability on January 30, 1997. Her claim—

which alleged disability due to loss of function of her left hand and pain in her left shoulder, wrist, and hand—was denied initially and on reconsideration, and she requested a hearing before an ALJ. In preparation for the hearing, the ALJ reviewed the report of Dr. Mila Bacalla, the SSA's consulting physician. Dr. Bacalla had evaluated Mrs. Lopez's residual functioning capacity in June 1998, a process that included reviewing her medical history. Of significance here, Dr. Bacalla recounted that the medical evidence of record showed that Mrs. Lopez suffered from bilateral carpal tunnel syndrome, meaning in *both* hands. Dr. Bacalla saw no sign of anatomic abnormality in either hand and concluded that Mrs. Lopez had normal grip strength in her right hand but decreased grip and some difficulty with fine manipulation in her left. Dr. Bacalla concluded that Mrs. Lopez could sit, stand, and walk without limitation, and could lift 25 pounds frequently and 50 pounds occasionally. But Dr. Bacalla acknowledged that all of these activities were limited by weakness in Mrs. Lopez's left hand and that any usage of her left hand would have to be monitored.

At the hearing Mrs. Lopez testified that since 1997 she had continued to experience pain and discomfort in her left shoulder, arm, and hand. She stated that she felt nearly constant pain in her left wrist and hand and that she always wore a wrist splint at night and regularly wore one during the day to control movement in her left wrist. She also stated that she could not bend her left wrist. She testified that she often experienced numbness, tingling, and swelling in her fingers on her left hand and that her left hand was often cold and clammy. She added that the pain in her left shoulder would go away for as long as two or three months at a time but would then return for at least six weeks and as long as three months.

Mrs. Lopez also testified that she experienced pain and swelling in her right wrist and hand from 1997 until the

date of the hearing. She had not reported right-side difficulties in her application for benefits. But according to Mrs. Lopez, she had planned to have carpal tunnel release surgery on her right wrist after she completed surgery and therapy on her left wrist. The pain and discomfort in her left wrist had not improved after surgery, however, so she never consented to surgery on her right wrist. She explained that the swelling in her right hand limited her ability to pick up items and made her very clumsy. Mrs. Lopez estimated that these symptoms would occur approximately one day during every three-week period and would usually be gone by the following morning.

Mrs. Lopez also recounted that the pain and discomfort she experienced in both hands severely limited her ability to accomplish everyday tasks. She had difficulty cooking, washing dishes, driving, and making a bed. She rarely went to the grocery store alone because she had difficulty picking up bottles or canned goods. She could clean around the house, but only when her right hand was not bothering her. Furthermore, the pain impacted her ability to concentrate; she testified that at times she could not have a conversation with her husband or play with her grandchildren because she was unable to focus her mind on anything other than her pain.

After examining the medical reports and Mrs. Lopez's testimony, the ALJ concluded that she could lift and carry 10 to 20 pounds, could push and pull up to 10 pounds with her upper extremities, and could sit, stand, and walk without limitation. Although Mrs. Lopez never conclusively stated that she was either right- or left-hand dominant, the ALJ determined that she was right-hand dominant because she ate and wrote with her right hand. Finally, the ALJ concluded that she had no functional use of her non-dominant left hand. The ALJ then applied the five-step analysis outlined by 20 C.F.R. § 404.1520 and concluded that Mrs. Lopez: (1) was not currently em-

ployed; (2) had a "severe" impairment, specifically carpal tunnel syndrome in her left wrist and hand; (3) had no functional use of her non-dominant left hand; (4) was no longer able to perform the semi-skilled and unskilled work that she had performed in the past; and (5) was nonetheless able to perform the job of machine tender at the light exertional level. But in response to a hypothetical posed by Mrs. Lopez's attorney, the vocational expert conceded that there were no available jobs for Mrs. Lopez if she had no use of her right hand for even one day out of every three weeks. The ALJ concluded, however, that there existed "no medical evidence of a right hand problem" and that Mrs. Lopez's testimony regarding the existence of such a problem was not credible. Accordingly, the ALJ determined that Mrs. Lopez could perform the 1,500 jobs in the regional economy identified by the vocational expert and denied Mrs. Lopez disability benefits.

Mrs. Lopez requested review by the SSA's Appeals Council and submitted additional evidence documenting the existence of carpal tunnel syndrome in her right wrist. Included in this evidence were the reports of three separate doctors, each of whom indicated that Mrs. Lopez had carpal tunnel symptoms in her right wrist. The documents also show that the doctors discussed resolving those symptoms through the use of wrist splints, anti-inflammatory medication, and possible carpal tunnel release surgery on her right wrist. After examining these documents the Appeals Council denied review, making the ALJ's decision final.

In order for a symptom or combination of symptoms to be the basis for a finding of disability, the claimant must show medical evidence demonstrating the existence of an impairment "that could reasonably be expected to produce the symptoms." SSR 96-7p. But because the ALJ determined that "there was no medical evidence of a right

hand problem," he could not conclude that Mrs. Lopez's right-hand symptoms were the basis for a finding of disability. On appeal Mr. Lopez, on behalf of Mrs. Lopez, challenges the ALJ's finding that there was no medical evidence that Mrs. Lopez had experienced right-hand impairment. Assuming the existence of such evidence, Mr. Lopez also challenges the ALJ's decision to discredit her testimony regarding her right-hand functional limitations. Because the vocational expert testified that there would be no jobs available to her if she had right-hand functional limitations, the parties agree that the ALJ's determination regarding Mrs. Lopez's ability to use her right hand is central to this case.

We will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law. 42 U.S.C. § 405(g); *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). In this substantial-evidence determination, we consider the entire administrative record but do not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, we conduct a "critical review of the evidence" before affirming the Commissioner's decision, *id.*, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues, *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, and here the ALJ's conclusion that there was *no* medical evidence of a right-hand problem is not supported by the record. Indeed Dr. Bacalla noted—and the ALJ stated in his decision—that according to the medical evidence of record Mrs. Lopez had carpal tunnel syndrome in both hands. And though the ALJ's decision acknowledges that he disregarded that

evidence, the reasons he provides for doing so are insufficient. First, he notes that Mrs. Lopez complained of right-hand pain and wore splints on both hands at night. But this statement supports rather than undermines the existence of a right-hand problem. Also, the ALJ observed that an MRI and an EMG showed mild carpal tunnel syndrome in her left wrist but did not mention her right wrist. As Mr. Lopez correctly points out, however, these tests were conducted only on her left wrist and hand and so it should have been no surprise to the ALJ that they did not evidence a right-side ailment. (An EMG on her right wrist confirmed the carpal tunnel diagnosis, but this report was not given to the ALJ and first surfaced in proceedings before the Appeals Council.)

The Commissioner argues that the ALJ's determination that Mrs. Lopez's testimony about her right-hand problems was "not fully credible" sufficiently explains the ALJ's conclusion. But where, as here, medical evidence supports the claimant's allegations and the ALJ nevertheless rejects a claimant's testimony as not credible, "the ALJ cannot merely ignore the claimant's allegations," *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001), and must articulate "specific reasons" for his finding, SSR 96-7p. Those reasons must be supported by record evidence and must be "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

The reasons provided by the ALJ for discrediting her testimony, however, are not specific and do not illuminate his conclusion that there was "no medical evidence of a right hand problem." The ALJ explained that he did not believe Mrs. Lopez's testimony regarding whether she was right- or left-hand dominant. But although that statement properly explained his decision to conclude that Mrs. Lopez was actually right-handed, it provides no in-

sight into his decision to ignore the claimant's allegations of pain and swelling, which appear to be supported by medical evidence. And though the ALJ discussed Mrs. Lopez's testimony, her treatment history, and the objective medical evidence before discrediting her testimony, as required by 20 C.F.R. § 404.1529, he did not explain the apparent conflict between that information and his conclusion that Mrs. Lopez was not credible. Perhaps the ALJ did not perceive a need to explain his credibility determination because he already had concluded that there was no medical evidence supporting Mrs. Lopez's allegations. But, as we have said, that conclusion is untenable, and so the ALJ was required to explain his decision to disregard her testimony. *See Clifford*, 227 F.3d at 872 (noting that where the claimant's testimony is supported by some objective medical evidence, the ALJ cannot merely disregard that testimony). In *Clifford*, we noted that the ALJ need not discuss every piece of evidence but "must articulate some legitimate reason for his decision." *Id.* Since the ALJ provided no such explanation for discrediting Mrs. Lopez's testimony regarding her right-hand impairment and determining that she had no such impairment, we cannot trace the path of his decision. *See id.* at 874.

It would have been possible for the ALJ to decide, at least given the medical evidence available to him at the time of the hearing, that Mrs. Lopez presented *insufficient* evidence of right-hand impairment. But in concluding that there was *no* such evidence, the ALJ actually *ignored* the available evidence and failed to explain his conclusion. Based on the present record, we cannot discern how the ALJ reached his conclusion that Mrs. Lopez had no right-hand limitations other than by substituting his own judgment for that of the medical professionals. *See Clifford*, 227 F.3d at 870 (noting that an ALJ may not "substitute his own judgment for a physician's opinion

without relying on other medical evidence or authority in the record"); *see also Dixon v. Massanari*, 270 F.3d 1171, 1177-78 (7th Cir. 2001); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995); *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994); *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Accordingly, we cannot conclude that substantial evidence supports his determination that Mrs. Lopez could work as a machine tender and, thus, was not disabled.

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED to the SSA for reconsideration.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*