NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued November 13, 2007
Decided December 20, 2007

**Before**

Hon. JOHN L. COFFEY, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 07-1442

| | |
|---|---|
| TONYA OAKES, <br>      *Plaintiff-Appellant,* | Appeal from the United States District Court for Southern District of Indiana, Indianapolis Division. |
|   *v.* | |
| | No. 06 C 491 |
| MICHAEL J. ASTRUE, <br> Commissioner, <br>      *Defendant-Appellee.* | John Daniel Tinder, <br> *Judge.* |

**O R D E R**

Tonya Oakes suffers from degenerative disc disease that causes her severe back pain. In 2002 her application for Social Security disability benefits was denied administratively, and after a hearing an Administrative Law Judge also concluded that she is not disabled. Oakes sought review of the ALJ's decision in the district court, which remanded for further proceedings because the ALJ had failed to give controlling weight to the opinion of Oakes's treating physician. On remand the ALJ once more concluded that Oakes is not disabled, and she again sought review; this time the district court upheld the ALJ. Oakes now appeals to this court. Because the ALJ did not apply the correct legal standard in determining whether to grant

controlling weight to the treating physician's opinion and erroneously disregarded this opinion, we vacate the judgment of the district court and remand for further proceedings.

Oakes has held many jobs—she's been an assembly line worker, waitress, cook, farm worker, and cashier. She first started experiencing back pain in 1998 when she was working the line at a General Electric factory. Oakes visited her personal physician, who ordered an MRI that revealed a herniated disc. An epidural steroid injection and medication alleviated the pain. But the pain returned, and in early 2000 her physician ordered two more steroid injections and prescribed more pain medicine, this time with less success. A few months after the third injection, Oakes went to the emergency room in pain. She was examined by the same doctor who administered her last injection, and he noted that Oakes's herniation was worsening and affecting her legs and ankles. He ordered another MRI, which showed early signs of degenerative changes. He prescribed additional medication and referred Oakes to Dr. John Chambers, an orthopedic surgeon, with a recommendation for surgery if she showed no improvement in six weeks.

Six weeks passed with no improvement, and in August 2000 Oakes underwent a lumbar discectomy performed by Dr. Chambers. After recuperating she went back to her job at General Electric, but the pain returned and she was fired in early December 2000 for missing work. Three months later she found work at KB Foods stacking cases of food, wrapping pallets, labeling containers, and moving pallets with a hand jack. When she continued experiencing pain, she tried switching jobs within KB Foods without success. The pain only increased and made it difficult for her to sit or stand for any length of time. She became unable to work at KB Foods as of April 2001.

Oakes returned to Dr. Chambers in December 2001 complaining of worsening pain and numbness and tingling in her hips and legs. Chambers observed that Oakes's range of motion was limited, and x-rays revealed a degenerative collapse of her herniated disc. He recommended continued use of pain medicine and follow-up visits, but the pain did not subside. A month later Chambers referred Oakes to a physical therapist and another doctor for further testing. These tests revealed that two discs in Oakes's spine had collapsed, causing pain in nearby discs. Two months later, in March 2002, Chambers informed Oakes that she had a significant "tear" between two discs. Because of the progression of her disease, however, he recommended against further surgery and suggested conservative treatment with medications.

In April 2002, Oakes filed a claim for disability benefits. (She filed a second, indistinguishable application in March 2004, but the two applications were consolidated and have been treated as one by the parties.) Her alleged onset date

is August 25, 2000. Oakes maintained that she was unemployed and in such severe pain that she had to change positions every 15 to 20 minutes, partly to alleviate increasing numbness in her left leg. She reported that she could still bathe herself and do house work, but she added that she had become increasingly reliant on her husband because after 10 minutes of exertion she needed to rest for a few hours.

Oakes also submitted a "Physician's Capabilities Assessment" completed by Dr. Chambers. In his evaluation Chambers stated that Oakes had post-discectomy syndrome and that she was only capable of performing part-time sedentary work. Specifically, he noted that she could sit, stand, or walk for no more than one hour at a time and for no more than two hours for each activity during any workday, effectively limiting her to working a maximum of six hours per day. Oakes later supplemented her claim with additional medical records from Chambers; his progress records noted further disc degeneration and observed that Oakes was " in obvious distress" and could not sit or stand.

For its part the Social Security Administration had a physician review Oakes's medical records. This consultant doctor concluded that Oakes had a slow gait with a decreased range of motion but was capable of sitting, standing, and walking in combination for more than eight hours during a workday.

Following administrative denials of her claim, Oakes requested a hearing before an ALJ. A vocational expert and a medical expert, both selected by the ALJ, testified in addition to Oakes at the August 2003 hearing. Oakes related her work history and the extent of her pain. The medical expert, Dr. Christopher Stack, testified that he had reviewed Oakes's medical records and concluded that she had lumbar spondylosis (inflammation of one or more vertebrae, *see* Stedman's Medical Dictionary 1678 (27th ed. 2000) and an absent right ankle jerk (the parties describe this as a form of neurological abnormality) with no other neurological findings. Stack opined that Oakes was not per se disabled but did have a severe impairment that necessitated she be restricted to light work.

In August 2003 the ALJ denied Oakes's claim for benefits. He agreed that she had a severe impairment, but nonetheless concluded that she still could perform her past relevant work as an assembly line worker. In reaching this conclusion, the ALJ rejected Dr. Chambers's opinion that Oakes lacked the residual functional capacity to sit, stand, and walk more than six hours total during a workday. Instead the ALJ deferred to the consultant doctor's opinion that Oakes could work eight hours a day with certain restrictions recommended by Dr. Stack. The ALJ explained that Stack, "when questioned by the claimant's attorney," had characterized the "residual functional capacity and other report by Dr. Chambers as not being supported by the clinical and objective findings of record."

The district court in December 2004 reversed this decision, reasoning that the ALJ erred by not deferring to the opinion of the treating physician, Dr. Chambers, when evaluating Oakes's residual functional capacity. The court noted that the ALJ had stated incorrectly that Dr. Stack testified that the clinical and objective findings did not support Chambers's opinion. In fact Stack had said there was no reason to doubt Chambers's evaluation of Oakes's residual functional capacity and that Oakes's testimony about the pain she was experiencing was consistent with the objective evidence in the record.

On remand, the parties submitted additional documentary evidence in preparation for a second hearing before the ALJ. In a statement Oakes confirmed that her condition had not improved since her prior hearing, and she maintained that pain and fatigue prevented her from engaging in physical activity. Dr. Chambers, who had examined Oakes in February 2005 for the first time since March 2003, said that Oakes remained "neurologically intact" but had low back pain resulting from a disc disorder. Chambers referred Oakes to a doctor for pain management, who confirmed Chambers's diagnosis and injected Oakes with pain killers. Another MRI was done, and both Chambers and the pain-management physician noted that the results showed disc herniation and early signs of inflammation of her vertebrae. A second consultant physician selected by the Social Security Administration reported that his examination of Oakes had confirmed the diagnosis of degenerative disc disease. This consultant doctor concluded that because of her pain Oakes would "likely be limited to walking two hours in an eight-hour-day."

At the second hearing, Dr. Stack and the vocational expert who was present at Oakes's first hearing did not testify. Instead, a new medical expert selected by the ALJ, Dr. Richard Hutson, and a different vocational expert testified. Hutson testified that, after reviewing Oakes's medical records, he agreed with Dr. Chambers's diagnosis and conclusion that Oakes should be limited to sedentary work, but he disagreed with Chambers that Oakes did not have the residual functional capacity to work more than part-time. When pressed to explain, Hutson stated that Chambers lacked "the objective medical evidence to back that up." Hutson instead concluded, based on the same medical records available to Chambers, that Oakes could do "a full line of sedentary work" with certain limitations and a five-minute break every hour to stand. On cross-examination, however, Hutson acknowledged that Chambers is a "very good, a very good" doctor. And he conceded that every test performed by Chambers and Oakes's other physicians, including MRIs, x-rays, straight-leg raising tests, and discograms, was a medically acceptable diagnostic test.

Finally, the vocational expert testified that there would be no full-time sedentary positions available for an unskilled laborer who is effectively limited to

working six hours per day.  In contrast, said the vocational expert, there are sedentary jobs available for an unskilled individual who with regular breaks and some restrictions can work eight hours a day.

The ALJ again found that Oakes did not meet the statutory definition of "disabled" because, in his view, she has the residual functional capacity to perform a reduced range of sedentary work on a full-time basis.  In reaching this conclusion, the ALJ first found that Oakes's testimony about her functional limitations was not credible.  The ALJ reasoned that Oakes had not sought treatment from Dr. Chambers for a period of almost two years, she was still caring for her children and doing some housework, and, according to the ALJ, she did not exhibit characteristics of one in pain at the hearing.  The ALJ also concluded, as he had done in his previous decision, that Chambers's opinion should not be given controlling weight.  He noted that a treating physician's opinion should be given controlling weight only if "(1) the opinion is well supported by objective medical findings and (2) it is not inconsistent with the other substantial evidence in the record."  The ALJ then reasoned that Chambers's opinion was not entitled to controlling weight because it was inconsistent with other evidence in the record, i.e., the testimony of Dr. Hutson and the written opinion of the consultant doctor who reviewed the medical record after the first hearing.  The ALJ added that, despite some objective medical evidence of abnormal neurological findings, "overall there is no documented abnormal neurological deficit of motor or sensory function."  Lastly, the ALJ reasoned that Chambers's opinion should not be controlling because the doctor "necessarily believed the claimant" and the ALJ did not.

Oakes appealed this determination to the Appeals Council, which declined review, and then sought review in the district court.  This time the district court upheld the decision of the ALJ.  The court reasoned that substantial evidence supported the ALJ's finding that Oakes was not credible and his conclusion that Dr. Chambers's assessment of her residual functional capacity could be disregarded in favor of the testimony of Dr. Hutson and the consultant doctor.

It is undisputed that Oakes has a severe impairment that prevents her from returning to her past relevant work.  Oakes is "disabled," then, unless given her age, education, and work experience she has the residual functional capacity to adjust to other sedentary work.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  The parties agree that if Oakes cannot work eight-hour days with certain restrictions, then she is disabled.  *See Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000).  Dr. Chambers concluded that she could not meet that threshold; the ALJ concluded that she could. Oakes contends that the ALJ's determination on this critical point cannot stand because his finding that her testimony was not credible and his decision to ignore Dr. Chambers's assessment of her residual functional capacity are not supported by substantial evidence.

Where, as here, the Appeals Council has declined to review the ALJ's decision, the ALJ's decision constitutes the final decision of the Commissioner. *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). We review the ALJ's decision to determine if it is supported by substantial evidence. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *See Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007) (quotation marks and citation omitted).

Oakes first argues that the ALJ erred by not fully crediting her testimony about her physical limitations. According to Oakes, the ALJ placed too much weight on the fact that she continues to do some housework, and on her deportment at the hearing, in deciding not to fully credit her personal assessment of the disabling effect of her pain. An ALJ's credibility determinations are entitled to special deference and will not be disturbed unless unreasonable or unsupported. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The ALJ, however, must explain a determination that the claimant lacks credibility. *See Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

In this case the ALJ adequately explained why, in essence, he thought Oakes was exaggerating her physical limitations, and that explanation is not unreasonable. The ALJ was entitled to consider Oakes's demeanor at the hearing when making his credibility determination. Oakes correctly points out that courts have questioned the so-called "sit and squirm" test because it is easily manipulable. But this court has repeatedly endorsed the role of observation when determining credibility. *See Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing cases). Additionally, while courts have questioned whether doing housework really evidences that a claimant also is able to work outside the home, *see*, *e.g., Mendez v. Barnhart*, 439 F.3d 360, 363-64 (7th Cir. 2006), the ALJ is allowed to consider whether the claimant's daily activities are inconsistent with her stated inability to work, *see Powers*, 207 F.3d at 435. Finally, Oakes ignores the ALJ's other reason for not fully accepting her testimony: she apparently did not see Dr. Chambers for almost two years between early 2003 and early 2005, and medical records suggest that she responded positively at least to some forms of medication. In this court, counsel for Oakes attributes the gap in treatment to a lack of health insurance. That response might carry weight if there was record evidence to support it, but Oakes was not asked about the gap at the hearing and thus never explained it.

The credibility determination must therefore stand, but in the end we do not believe this case turns on Oakes's credibility or whether she exaggerated the disabling effect of her pain. The relevant dispute is not about whether Oakes can engage in *any* activity or *any* work; the question is whether she still has the residual functional capacity to perform limited sedentary work for *eight* hours a

day. The parties recognize that, if Oakes is unable to work a full eight hours per day, she is disabled. The physicians disagreed on this point, with Dr. Chambers saying that Oakes cannot work eight hours and the doctors hired by the agency saying she can. And that disagreement sets up the real issue on appeal: whether the ALJ erred by failing to give controlling weight to Chambers's opinion regarding Oakes's residual functional capacity.

A treating physician's opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). This rule takes into account the treating physician's advantage in having personally examined the claimant and developed a rapport, *see Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006), while controlling for the biases that a treating physician may develop such as friendship with the patient, *see Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

The ALJ's decision reveals a misunderstanding of this rule. While the ALJ correctly articulates the rule at one point, he also goes on to state: "[T]he issue of residual functional capacity is one reserved to the Commissioner or her designate the administrative law judge, by Social Security Ruling 96-5p. As such, even treating source opinion on reserved issues (of which RFC is one) is given no special weight." The Social Security Ruling cited by the ALJ simply recognizes that the Commissioner makes the final determination about an applicant's residual functional capacity and that this determination must be "based upon consideration of all relevant evidence in the case record." Social Security Ruling 96-5p. The treating-physician rule determines how the ALJ must weigh the opinion of the treating source. If the opinion of the treating physician is supported by acceptable medical evidence and is not inconsistent with other substantial evidence in the record, it must be given controlling weight. 20 C.F.R. § 404.1527(d)(2); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). But here the ALJ asserted that the opinion of the treating physician—Dr. Chambers—was to be given "no special weight" because it concerned Oakes's residual functional capacity. This understanding of the governing legal standard is wrong. *See, e.g., Leckenby v. Astrue*, 487 F.3d 626, 635 (8th Cir. 2007) (holding that ALJ erred by not deferring to treating physician's assessment of residual functional capacity); *Orn v. Astrue*, 495 F.3d 625, 633-34 (9th Cir. 2007) (same); *Smith v. Apfel*, 231 F.3d 231 F.3d 433, 437-38 (7th Cir. 2000) (same). And the mistake is, in and of itself, a reason to remand. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

The ALJ's misunderstanding of the treating-physician rule is reflected in his application of the rule to Oakes. We will uphold an ALJ's decision not to give controlling weight to a treating physician's opinion where that physician did not

have the requisite expertise, familiarity with the patient, or longitudinal relationship, or where the opinion was inconsistent with objective medical evidence like x-rays. *See White v. Barnhart*, 415 F.3d 654, 658-59 (7th Cir. 2005); *Skarbek v. Barnhart*, 390 F.3d 500, 503-04 (7th Cir. 2004); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). However, in this case there is no evidence that Dr. Chambers lacked the requisite expertise or relationship with Oakes to render his opinion unworthy of deference. Rather, Dr. Hutson conceded that Chambers is a "very good" doctor. Moreover, the MRIs, x-rays, and other diagnostic tests in this case support, rather than undercut, Chambers's opinion, and Hutson acknowledged that every test underlying Chambers's opinion was medically acceptable.

In the end, the chief reason the ALJ disregarded Dr. Chambers's conclusion was Dr. Hutson's opinion that Chambers lacked objective medical evidence to support his conclusion. Hutson though, did not explain what was missing or why Chambers's opinion was otherwise inadequate. "[A] contradictory opinion of a non-examining physician does not, by itself, suffice" to provide the evidence necessary to reject a treating physician's opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). But here that is all there is, and by rejecting Chambers's opinion in favor of Hutson's, the ALJ effectively substituted his own judgment for that of the treating physician, which an ALJ cannot do. *See Clifford*, 227 F.3d at 870. It may be that the ALJ thought that the absence of greater abnormality in Chambers's neurological findings undercut his opinion regarding Oakes's residual functional capacity. But while the presence of neurological abnormalities would have been essential to find Oakes per se disabled under Step 3 of the disability analysis, that same evidence is not required at Step 5, where this case was decided. The ALJ simply failed to explain how this fact had any effect on Chambers's opinion regarding Oakes's residual functional capacity.

Accordingly, we VACATE the judgment of the district court and REMAND for further proceedings.