**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 22, 2009
Decided May 7, 2009

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 08-2663

| | |
|---|---|
| PEGGY C. COLLINS, | Appeal from the |
| *Plaintiff-Appellant*, | United States District Court for the |
| | Southern District of Indiana, |
| *v.* | Indianapolis Division. |
| | |
| MICHAEL J. ASTRUE, | No. 1:07-cv-1078-LJM-TAB |
| Commissioner of the | |
| Social Security Administration, | Larry J. McKinney, |
| *Defendant-Appellee*. | *Judge*. |

**O R D E R**

Peggy Collins applied for disability insurance benefits and supplemental security income, claiming she was unable to work primarily because of pain associated with severe degenerative arthritis in her knees. After discounting the opinion of Collins's treating physician, the administrative law judge ("ALJ") concluded that Collins was able to perform sedentary work and denied the application. Because the ALJ misapplied the relevant administrative regulations and his decision to discount the treating physician's opinion was not supported with adequate reasons, we vacate the judgment of the district court and remand for further proceedings.

## Background

Collins's capacity to perform sedentary work, which requires sitting for 6 hours and standing and/or walking for 2 hours during an 8-hour workday, *see* 20 C.F.R. § 404.1567(a); S.S.R. 83-10, 1983 WL 31251, at *5, is at the heart of this case. An obese diabetic, Collins was first diagnosed with degenerative joint disease in August 2002 and has complained consistently of knee pain and difficulty walking since that date. She has also reported difficulty "sitting still," explaining that she has to "keep moving in her seat." In addition to her knee troubles, Collins also has impairments of her back, wrists, hands, elbows, and ankles. In the four years between Collins's onset date and her administrative hearing, she was examined by at least six physicians and three physical therapists.

Dr. Olson, an orthopedic specialist, has treated Collins regularly since she was referred to him by her family physician in August 2003 and is Collins's "treating physician" for purposes of her application for benefits. Dr. Olson has examined Collins at least 15 times and has consistently diagnosed her degenerative joint disease as severe. He has prescribed steroid injections, pain medication, ice and heat treatments, and physical therapy, and has also recommended knee-replacement surgery. Collins has consistently rated her knee pain, which she says is constant, as a 5 to 8 on a 10-point scale, and has at times reported that the pain was so severe that she almost passed out.

In December 2003 Collins consulted with another physician at the request of the state-benefits agency. This physician opined that Collins had moderate to severe degenerative joint disease and was significantly limited in her ability to stand, walk, lift, carry, and handle objects. He concluded that Collins was unable to stand or walk at least 2 hours in an 8-hour day, an assessment that would eliminate the possibility of sedentary work.

A few months later, in early 2004, Collins's record was reviewed by Drs. Bastnagel and Roush, two state-agency physicians whose opinions the ALJ considered. Reviewing only her record and without examining her, they both concluded that she *could* fulfill the requirements of sedentary work. Specifically, they opined that she could sit for a total of 6 hours and stand and/or walk with a hand-held assistive device for a total of 2 hours in an 8-hour workday, while also regularly lifting 10 pounds and occasionally lifting 20 pounds. Two months later, Collins was deemed fit for a commercial driver's license by a doctor who opined that she had sufficient lower-limb strength to operate foot pedals properly. Nevertheless, Collins's family physician gave her a prescription note in June 2004 stating that she could not stand for more than one hour a day. The same week Dr. Olson gave Collins another prescription note tersely stating that she should not lift anything over 5 pounds and needed "90% sit down."

Two years after the state-agency physicians reviewed her medical records, Dr. Olson again saw and evaluated Collins's physical limitations in August 2006. He concluded that Collins could stand and/or walk for a total of only 2 hours and sit for a total of only 4 hours in an 8-hour workday. These limitations exclude sedentary work. He also noted that although she could occasionally lift and carry up to 10 pounds, she could not use her legs for repetitive foot motions, and she could never bend, squat, crawl, or climb. He further concluded that Collins had "degenerative joint disease of both knees with gross crepitus on range of motion," and that her age and obesity prevented knee-replacement surgery.

At her administrative hearing on August 25, 2006, Collins testified that she could sit for only 30 minutes at a time, up to a maximum of 4 hours in an 8-hour day. She also testified that she could stand for only 10 minutes at a time. The ALJ elicited testimony from Dr. Schneider, an orthopedic surgeon who had reviewed Collins's medical record but did not treat her, and Ray Burger, a vocational expert.

The ALJ performed the requisite five-step analysis, *see* 20 C.F.R. §§ 404.1520, 416.920, and concluded that Collins was ineligible for benefits. At step one, the ALJ found that Collins had not performed substantial gainful activity since July 1, 2002, her alleged onset date. At step two, he concluded that she had severe impairments including obesity; diabetes; degenerative changes in her right ankle, right heel, and both knees; plantar fascitis in her right foot; medial epicondylitis affecting her left elbow; left cubital tunnel syndrome; de Quervain's syndrome or tenosynovitis in her right wrist; and tenosynovitis in her right thumb. But he concluded at step three that Collins's impairments were not so severe that they met the criteria of any impairment contained in the Listing of Impairments.

This brought the ALJ to step four and sedentary work. The ALJ concluded that Collins could not return to her past relevant work as a transportation driver, but that she could perform sedentary work, occasionally lifting and carrying 10 pounds, and sitting for 6 hours plus standing and/or walking for 2 more hours during an 8-hour workday, *see* 20 C.F.R. § 404.1567(a); S.S.R. 83-10, 1983 WL 31251, at *5. In reaching his conclusion, the ALJ recited Collins's treatment notes but offered little analysis of them and discounted Collins's testimony as "overly dramatic."

The ALJ also refused to give "any significant weight" to the opinion of Collins's treating physician (Dr. Olson) that she could not sit for over 4 hours, disabling her from sedentary work. In refusing to give the opinion of Collins's treating physician controlling weight, the ALJ said that the opinion was varied, inadequately documented, and the province of the ALJ:

> Dr. Olson opined in June of 2004 that the claimant could not lift over five
> pounds and need[ed] to sit "90%" of the time.  In July of 2006, however, he
> stated she cannot sit more than four hours a day or one hour at a time.  These
> assessments are simply not credible.  Nowhere in the claimant's treatment
> notes are notations that she had trouble lifting, carrying or sitting and, in
> August of 2006, Dr. Olson stated she can lift and carry ten pounds
> occasionally.  In light of the variations in Dr. Olson's limitations, it is difficult
> to afford his opinions any significant weight, particularly on issues reserved
> to the Commissioner.

The ALJ also declined to defer to the opinions of the two nonexamining state-agency physicians, but did accept the conclusion of the nonexamining testifying physician, Dr. Schneider, who, according to the ALJ, had opined that Collins could sit long enough for sedentary work.  (Collins, however, disagrees with this interpretation of Dr. Schneider's testimony.)  Finally, at step five, the ALJ concluded that under the *Medical-Vocational Guidelines*, *see* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.28, Collins was not disabled because there were jobs that she could perform.

The Appeals Council denied review, and the district court affirmed the ALJ's ruling.

**Analysis**

Where, as here, the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner.  *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).  We will reverse the ALJ's denial of disability benefits if it is based on legal error or is not supported by substantial evidence, meaning "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The ALJ must build an "accurate and logical bridge" between the evidence and his conclusions, and we must confine our review to those reasons the ALJ supplies for the decision.  *Getch*, 539 F.3d at 481-82; *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).  If an ALJ's decision contains inadequate evidentiary support or a cursory analysis of the issues, this court must reverse.  *Lopez*, 336 F.3d at 537.

On appeal Collins asserts that the ALJ's conclusion that she has the residual functional capacity to perform sedentary work is not supported by substantial evidence. Collins's primary argument is that the ALJ should have given controlling weight to the opinion of Dr. Olson, her treating physician.  Dr. Olson opined that Collins cannot sit for

more than 4 hours or function for more than 6 in an 8-hour workday; if controlling, this opinion eliminates the possibility of sedentary work, which requires the ability to sit for up to 6 hours and work 8 hours in a workday. *See* 20 C.F.R. § 404.1567(a); S.S.R. 83-10, 1983 WL 31251, at *5. We agree with Collins that the ALJ's analysis of Dr. Olson's opinion is deficient and therefore cannot stand.

First, as both sides agree, the ALJ used an incorrect legal standard in assessing Dr. Olson's medical opinion. A treating physician's opinion regarding an applicant's physical restrictions is entitled to controlling weight if it is well supported by objective medical evidence and consistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). In contrast, a treating physician's administrative opinion—such as the applicant's residual functional capacity (for sedentary work, for example) or whether the applicant is "disabled"—is not entitled to any particular weight because those determinations are "reserved to the Commissioner." 20 C.F.R. § 404.1527(e). In stating that Dr. Olson's opinion was not entitled to significant weight because it concerned "issues reserved to the Commissioner," the ALJ confused these standards because Dr. Olson limited himself to a medical opinion. Had Dr. Olson opined, for example, that "Collins cannot perform sedentary work," his opinion would not be entitled to any weight because it would be a conclusion on residual functional capacity—a determination reserved to the Commissioner. But Dr. Olson gave only an assessment of Collins's physical limitations, which constitutes a "medical opinion" presumptively entitled to controlling deference under the treating-physician rule. *See* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinion" to include physician's judgment about the applicant's physical restrictions and what the applicant "can still do despite impairment(s)"); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) (explaining that reserving "ultimate issues" to the Commissioner protects the ALJ from having to credit a doctor's finding of disability but does not exempt the ALJ from obligation to explain why a treating physician's opinion is not being credited).

The government concedes the ALJ's error, but asserts that the mistake does not warrant reversal because the ALJ's analysis is "otherwise thorough and proper." We disagree. The ALJ failed to provide "good reasons" that were "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *See* 20 C.F.R. § 404.1527(d); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (1996)). Specifically, the administrative regulations instruct an ALJ when determining how much weight to give a treating physician's opinion to consider the length, nature, and extent of the physician-applicant relationship, whether the physician is a specialist in the applicant's condition, the degree of consistency between the opinion and other evidence in the record, and the extent to which the physician supported his opinion with medical

findings. 20 C.F.R. § 404.1527(d); *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). The ALJ did not apply these regulations. In deciding to not give "any significant weight" to Dr. Olson's opinion, he made no mention of the nature of Dr. Olson's relationship with Collins (Dr. Olson had evaluated Collins at least fifteen times over three years) or the fact that Dr. Olson was an orthopedic specialist. *See* 20 C.F.R. § 404.1527(d).

The ALJ gave only two reasons for his decision to not give Dr. Olson's opinion "any significant weight," but neither qualifies as a "good reason." First, he explained that Dr. Olson's opinion in 2006 that Collins could occasionally lift and carry 10 pounds and could not sit for more than 4 hours in an 8-hour workday was a "variation" from an "assessment" Dr. Olson had made in 2004 that Collins should not lift over 5 pounds and needed "90% sit down." But the 2004 "assessment" was just a brief note on a prescription pad and was not meaningful. First, the note gave no context from which the ALJ could reasonably determine the meaning of "90% sit down." Second, any variance between "occasionally" being able to lift 10 pounds and generally not lifting over 5 pounds is insubstantial. Finally, the ALJ failed to explain why any variation between the two "assessments" was not justified in light of the two-year gap between them and the progressive deterioration of Collins's degenerative condition.

The ALJ's second reason for rejecting Dr. Olson's opinion was that Collins's treatment notes contained no "notations that she had trouble lifting, carrying or sitting." But Dr. Olson expressly diagnosed "severe" degenerative joint disease and concluded that the combination of Collins's arthritis, back pain, and obesity prevented prolonged sitting, lifting, and carrying. The ALJ offered no reason why such a diagnosis is suspect without an explicit notation that Dr. Olson had observed Collins exhibiting difficulty with those activities. An ALJ may not substitute his own judgment for a physician's without relying on other medical evidence in the record, and the ALJ did not rely on other medical evidence in this case. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Because the ALJ both applied an erroneous legal standard ("reserv[ing] to the Commissioner" a medical judgment) and failed to articulate any good reason for significantly discounting Dr. Olson's medical opinion, his decision is not supported by substantial evidence. *See Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (explaining that ALJ's decision to accept one physician's opinion over another's without any consideration of the factors outlined in the regulations is reason for reversal); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (holding that ALJ's decision was not supported by substantial evidence because ALJ failed to provide "good reasons" in accordance with the administrative regulations for the weight he gave to treating physician's opinion). The ALJ's flaws in reasoning "might be dissipated by a fuller and more exact engagement with

the facts." *See Carradine v. Barnhart*, 360 F.3d 751, 756 (7th Cir. 2004). But that is a matter for remand because we may not seek alternative bases for the ALJ's conclusion that the record might permit. *See Steele*, 290 F.3d at 941; *SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943).

One other troubling aspect of the ALJ's decision deserves mention. In concluding that Collins can perform sedentary work, the ALJ treated the opinion of the testifying physician, Dr. Schneider, as signifying that Collins could perform sedentary work. But as Collins points out, Dr. Schneider's testimony is capable of two conflicting and equally plausible interpretations:

> **ALJ:** . . . And now, Dr. Ols[on] seemed to indicate that, at least the way I interpreted his opinion, that [Collins] should be limited to sedentary work without, without—
> **Dr. Schneider:** Yes, sir.
> **ALJ:** —getting into the carrying of 20 and 10 [pounds].
> **Dr. Schneider:** Correct.
> **ALJ:** And is, is—did you see that, that opinion from Dr. Ols[on] also?
> **Dr. Schneider:** Yes, sir, I have it right in front of me.
> **ALJ:** Okay. And is, is it in your opinion a reasonable functional capacity?
> **Dr. Schneider:** Yes, sir.
> **ALJ:** Based on the medical evidence?
> **Dr. Schneider:** Based on the medical evidence with arthritis and tendonitis and—
> **ALJ:** Okay. All right. Well—and those were the only opinions that I saw in the record.
> **Dr. Schneider:** Yes, those are the only ones that I saw.
> **ALJ:** All right. Well, thank you Doctor. I don't have any further questions.

According to this testimony, Dr. Schneider agreed with Dr. Olson's opinion, but then also agreed that Collins can perform sedentary work. One cannot tell if Dr. Schneider agreed with Dr. Olson's actual opinion (that Collins cannot perform sedentary work) or the ALJ's mistaken view of that opinion (that Collins can). Dr. Schneider's testimony points equally in opposite directions and therefore cannot serve as substantial evidence to support the ALJ's conclusions.

The ALJ's conclusions regarding Collins's residual functional capacity are not supported by substantial evidence. Accordingly, we VACATE the judgment of the district court and REMAND the case to the agency for further consideration. As Collins points out, hers is not the first case in which this particular ALJ has misstated the treating-physician rule. *See Oakes v. Astrue*, No. 07-1442, 2007 WL 4455436, at **6-7 (Dec. 20, 2007)

(unpublished).  We therefore urge the Commissioner to assign a new ALJ to handle any additional proceedings deemed necessary on remand.  *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).