In the

# United States Court of Appeals

### For the Seventh Circuit

———————

No. 07-2631

CHARLES E. GETCH,

*Plaintiff-Appellant,*

*v.*

MICHAEL J. ASTRUE,
Commissioner of Social Security,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 06 C 143—**Paul R. Cherry**, *Magistrate Judge.*

———————

ARGUED APRIL 22, 2008—DECIDED AUGUST 13, 2008

———————

Before RIPPLE, EVANS and WILLIAMS, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Charles Getch appeals the order of the district court upholding the Social Security Administration's denial of his application for Disability Insurance Benefits. Mr. Getch contends that the Administrative Law Judge ("ALJ"), who denied his application for benefits, erred in concluding that environmental conditions at his former workplace did not prevent him from resuming his

past work as a seam welder. Mr. Getch also contends that the ALJ failed to consider the combined impact of his health problems and erred in finding his testimony not fully credible. Finally, Mr. Getch argues that the Social Security Appeals Council erred in concluding that new evidence did not warrant rehearing before the ALJ. For the reasons set forth in this opinion, we reverse the judgment of the district court and remand for further proceedings before the agency.

# I

## BACKGROUND

### A.

Mr. Getch, who is presently 58, underwent emergency triple bypass surgery in 1998. He returned to his job as a seam welder several months later. In December 1999, while he was lifting heavy objects at work, Mr. Getch fractured his sternum at the site of the sternotomy that had been performed during his bypass surgery. Mr. Getch underwent a second surgery to reconstruct the broken sternum in March 2000, but that surgery was unsuccessful.

In October 2000, Mr. Getch visited a pain clinic, complaining of a grinding and popping sensation in his chest. Mr. Getch rated his pain during the day at 2 or 3 out of 10, with 10 representing extreme pain, although he reported that the pain grew worse with coughing or sneezing and kept him awake at night. Over the next year, Dr. Looyenga, a cardiologist, monitored Mr. Getch for further cardiac problems; he also treated his chest pain with Celebrex and

cortisone shots. In June 2001, Dr. Looyenga concluded that Mr. Getch was in good cardiac health. Early in 2002, however, Dr. Looyenga wrote a letter to another of Mr. Getch's treating physicians, Dr. Daly, informing him of Mr. Getch's ailments and noting that Mr. Getch had been unemployed since early 2000 because of his inability to perform strenuous activities.

In November 2001, Mr. Getch visited Dr. Geha, the chief of cardiothoracic surgery at the University of Illinois at Chicago. After examining Mr. Getch and reviewing his medical records, Dr. Geha concluded that Mr. Getch's sternum remained fragmented but otherwise his cardiac health had returned to normal. Dr. Geha did not believe that another operation would relieve Mr. Getch's sternum pain, and instead he recommended that Mr. Getch "switch to a type of job that avoids extremely heavy and strenuous activity and pulling on the upper extremities." A.R. at 121-22. He observed that, with "proper conditioning," Mr. Getch likely could return to a "reasonable level of activity." *Id*.

Despite Dr. Geha's opinion that he might be able to return to a job that did not involve strenuous activity, Mr. Getch did not return to work. In December 2002, Mr. Getch filed an application for disability benefits with the Social Security Administration. He claimed an onset of disability date of January 6, 2000—shortly after he fractured his sternum. His application was referred to the Disability Determination Bureau (the "state agency").

At the request of the state agency, another physician, Dr. Mahawar, examined Mr. Getch in January 2003.

Mr. Getch told Dr. Mahawar that he suffered from gout, which causes joint swelling and pain, although the record does not contain any prior medical evidence supporting a gout diagnosis. Mr. Getch stated that his gout caused him throbbing pain every other month because he had stopped treating it with medication after experiencing unpleasant side effects. Mr. Getch also reported problems with recurring chest pain, but he told Dr. Mahawar that cortisone injections prescribed by Dr. Looyenga and a pain clinic were helping to keep the pain in check. After examining Mr. Getch, Dr. Mahawar reported that his chest, heart, motor strength and range of motion were all normal, and that, although Mr. Getch walked with a slight limp, he did not require any assistance to move around. Dr. Mahawar did not observe symptoms of gout, including joint effusion, joint redness or soft-tissue swelling.

Two other state-agency physicians then reviewed Dr. Mahawar's report and Mr. Getch's medical records. They concluded that Mr. Getch could lift and carry 20 pounds occasionally and 10 pounds frequently, that he could stand or walk for 6 hours in an 8-hour work day, and that he occasionally could balance, stoop, kneel, crouch, crawl and climb ramps and stairs. The physicians concluded, however, that Mr. Getch never could climb ladders, ropes or scaffolds. They also recommended that Mr. Getch avoid concentrated exposure to extreme heat and cold, but they did not identify any other environmental limitations.

In January 2003, Mr. Getch also met, at the request of the state agency, with a psychologist, Dr. Walters. Mr. Getch

told Dr. Walters that he currently had fleeting thoughts of suicide but had not made plans to kill himself. He stated that he frequently felt helpless and hopeless, could not sleep at night, suffered from anxiety and constantly worried about the future. Despite his depression, however, Mr. Getch reported that he was able to groom, bathe and dress himself; that he occasionally cooked for himself; that he was able to fold clothes and shop for groceries; that he spent most of the day watching television, reading the newspaper, playing video games and surfing the internet; that he could drive; and that he helped his children with their homework after school. Dr. Walters diagnosed Mr. Getch with unspecified depressive disorder and generalized anxiety disorder. Two state-agency psychologists then reviewed Dr. Walters' report, along with Mr. Getch's medical records, and concluded that his depression and anxiety did not significantly interfere with his ability to work.

On the basis of the state agency's report, the Social Security Administration denied Mr. Getch's claim, initially in February 2003 and on reconsideration in June 2003. Mr. Getch timely requested a hearing before an ALJ.

Throughout 2003, primary-care physician Dr. Daly and cardiologist Dr. Looyenga continued to treat Mr. Getch's chest pain. In a November 2003 letter to Mr. Getch's lawyer, Dr. Daly opined that Mr. Getch was "disabled at present" due to coronary artery disease, the sternum fracture, gout, and situational anxiety and depression. A.R. at 208. Dr. Looyenga also completed a Cardiac Residual Functional Capacity Questionnaire in November 2003.

He observed that Mr. Getch suffered from coronary artery disease and hypertension that caused chest pain, anginal equivalent pain, shortness of breath and fatigue. Dr. Looyenga discounted the possibility that Mr. Getch was malingering and opined that his physical limitations prevented him from holding even "low stress" jobs or completing simple work tasks. He stated that Mr. Getch could walk only one city block without rest or severe pain, could stand fewer than 2 hours and sit for no more than 4 hours during an 8-hour work day, could never lift anything heavier than 10 pounds and rarely anything weighing less than 10 pounds, and never could twist, stoop, crouch or climb. Dr. Looyenga left blank the form's questions regarding potential environmental restrictions.

## B.

### 1.

At a hearing before an ALJ in August 2004, Mr. Getch testified that he continued to experience chest pain, which caused shortness of breath and prevented him from sleeping. He also stated that his gout caused foot and joint swelling so severe that sometimes he could not walk. Mr. Getch stated that his health problems had made him so depressed that he ate to the point of obesity.

Mr. Getch also testified regarding his work history. Before he fractured his sternum, he had worked as a seam welder for a company that makes cable for antennas and cellular-phone towers. Mr. Getch stated that he did not perform the welding himself; instead, he watched a video

monitor to assess whether a machine properly welded pieces of cable together. He further testified that, in his position as a seam welder, he did not have to lift or carry more than 10 pounds, he could alternate between standing and sitting whenever he wished, and he could sit more than 50 percent of the work day. Mr. Getch also stated, however, that smoke and chemical fumes inside the plant at which he had worked often made him cough; he also testified that the plant had no air conditioning or heating, leading to extreme temperature variations which exacerbated his chest pain.

Thomas Grzesik, a vocational expert, also testified at the hearing. The ALJ asked Mr. Grzesik to consider whether Mr. Getch could perform his previous work, assuming that Mr. Getch could lift and carry 10 pounds frequently and 20 pounds occasionally and that he needed to be able to sit more than half the day. Mr. Grzesik opined that, even given those limitations, Mr. Getch would be able to perform his past work as a seam welder. When the ALJ asked whether all positions for seam welder involve exposure to extreme temperatures or chemical fumes, Mr. Grzesik replied: "It would depend on the process. It would depend on the nature of the industry. . . . I would say probably 50 percent of the work would not." A.R. at 327.

Not satisfied with the medical record, the ALJ requested that Mr. Getch undergo a post-hearing examination by a cardiologist. The state agency, however, selected an internist, Dr. Rashan. Although Dr. Rashan's objective medical tests showed that Mr. Getch was generally healthy, he nonetheless concluded that Mr. Getch's gout prevented

him from lifting or carrying more than 10 pounds, standing or walking more than 2 hours or sitting for more than 6 hours in an 8-hour workday, and climbing, balancing, kneeling, crouching, crawling or stooping. Dr. Rashan opined that Mr. Getch should avoid dust, smoke and fumes, but he stated that extreme temperatures would not affect Mr. Getch's medical conditions. After the hearing, Dr. Looyenga also sent the ALJ a letter stating that Mr. Getch suffered from obesity, hypertension, depression, gout, high cholesterol and arthritis, but that his cardiac condition was significantly improved. Dr. Looyenga estimated that Mr. Getch could lift 10 to 15 pounds.

After considering all the evidence, the ALJ concluded that Mr. Getch was not disabled. In so finding, the ALJ applied the five-step analysis described in 20 C.F.R. § 404.1520(a)(4)(i)-(v). First, he found that Mr. Getch had not engaged in substantial gainful employment since the onset of his alleged disability. Second, he found that Mr. Getch's coronary artery disease and fractured sternum (but not his other ailments) constituted severe impairments that limited his ability to work, but that neither was a listed impairment and together they did not equal any listed impairment. Third, the ALJ chose not to credit Mr. Getch's testimony regarding the disabling effect of his chest pain, depression or gout because the medical record did not corroborate his reports; he also reasoned that Dr. Rashan's assessment of Mr. Getch's limitations did not make sense, given that objective testing showed Mr. Getch to be normal in virtually all measures. Furthermore, the ALJ continued, Dr. Daly's opinion that Mr. Getch was "disabled" could not be reconciled with treatment records and objective medical assessments.

At step four, the ALJ concluded that Mr. Getch retained the residual functional capacity to perform sedentary work, so long as he could alternate between sitting and standing, sit for more than half the work day, and avoid lifting or carrying objects weighing more than 20 pounds. Even with these limitations, the ALJ concluded, Mr. Getch could perform all of the job functions of his past relevant work as a seam welder. Therefore, he found, Mr. Getch was not disabled. The ALJ did not discuss whether Mr. Getch's past work as a seam welder presented environmental limitations incompatible with his medical condition. Furthermore, because the ALJ determined at step four that Mr. Getch was able to return to his previous work as a seam welder, he declined to discuss whether Mr. Getch could work at other jobs in the national economy.

Mr. Getch asked the Appeals Council to reconsider the ALJ's decision in light of new evidence showing that his gout symptoms had worsened in the months after the hearing before the ALJ. This evidence included treatment records from a new doctor, describing gout attacks that Mr. Getch had suffered between November 2004 and September 2005. The Appeals Council considered Mr. Getch's objections to the ALJ's decision, together with the new evidence, but it concluded that the new evidence would not alter the ALJ's decision and, therefore, that there was no basis for remanding the case.

**2.**

In April 2006, Mr. Getch filed this action in the district court, seeking judicial review of the ALJ's determination

under 42 U.S.C. § 405(g). Mr. Getch contended that: the ALJ erred in finding that he could resume his past relevant work; the ALJ should have found that his gout constituted a severe impairment; the ALJ improperly discounted the testimony of his treating physicians; the ALJ should have found his testimony fully credible; the ALJ failed to consider the combined impact of his health problems; and the Appeals Council should have reversed the ALJ's decision in light of his new evidence. After considering Mr. Getch's arguments, a magistrate judge, sitting by consent as the district court, concluded that the ALJ's decision was supported by substantial evidence. He also held that the Appeals Council did not err in refusing to remand the case based on Mr. Getch's new evidence.

## II

## DISCUSSION

### A.

Because the Appeals Council denied Mr. Getch's request for review, the ALJ's decision is the final decision of the Commissioner of Social Security. *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). In reviewing that decision, we are limited to examining whether it is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner*, 478 F.3d at 841 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ is not required to address

every piece of evidence or testimony presented, but he must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## B.

### 1.

Mr. Getch presents four challenges on appeal. He first contends that, had the ALJ given adequate consideration to the environmental conditions at his former workplace together with his doctors' advice to avoid those conditions, he could not have concluded at step four that Mr. Getch is capable of performing his past relevant work. It is not enough, Mr. Getch suggests, that *some* positions for seam welders are in hospitable environments, if the conditions of his former employer represent the norm. Although the claimant has the burden at step four to establish that he cannot return to his past relevant work, the ALJ still must make factual findings that support his conclusion. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Clifford*, 227 F.3d at 872.

We previously have remanded to the agency where an ALJ ruled at step four that a claimant could return to her past work simply because that work was sedentary and the claimant's medical condition did not prevent her from working at a sedentary level. *See Smith v. Barnhart*, 388 F.3d 251, 252 (7th Cir. 2004). In that case, the claimant suffered from arthritis in both of her hands. *Id.* The ALJ concluded that the claimant could return to her past

work as a tax preparer, director of a program for the elderly, or management and information specialist because all three jobs were defined as sedentary and, even with arthritis, she could perform *some* sedentary jobs. In reaching this conclusion, however, the ALJ neglected to evaluate whether the claimant's arthritis would prevent her from writing and typing—skills required by the particular type of sedentary work she had performed. *Id*. The ALJ's error, which required us to remand the case, "lay in equating [the claimant's] past relevant work to sedentary work in general." *Id.* Other circuits have reached similar conclusions. *See, e.g., Bowman v. Astrue*, 511 F.3d 1270, 1272-73 (10th Cir. 2008) (remanding to the agency where the ALJ did not address the impact of the claimant's limited use of her hand on her ability to perform her past relevant work as cashier); *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (holding that the ALJ should have considered that the claimant's past relevant work required constant stooping and bending); *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) (remanding where the reviewing court could not determine the factual basis for the ALJ's finding that the claimant could return to her past relevant work as a laundromat manager, despite her inability to perform repetitive hand movements).

The ALJ in this case did more than the ALJ in *Smith*: In addition to evaluating whether Mr. Getch could do sedentary work in general, the ALJ specifically considered whether seam welding would require Mr. Getch to lift heavy objects, stand most of the day, and so on. The ALJ did not determine, however, whether the job of seam welder also would require Mr. Getch to tolerate exposure

to dust and extreme temperatures, factors which he testified exacerbated his condition. The question this case presents is whether the findings of the ALJ were sufficient to build a "logical bridge" to the conclusion that Mr. Getch could perform his past work, or whether the ALJ also was required to consider expressly the impact of the work environment on Mr. Getch.

Although the ALJ was not required "to provide a 'complete written evaluation of every piece of testimony and evidence,'" *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)), he still should have considered at step four whether Mr. Getch could return to his past relevant work, despite the limitation that he avoid extreme temperatures and chemical fumes. *See Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991) (requiring that the ALJ identify the duties involved in the prior job and assess the claimant's ability to perform those specific tasks); *see also Frantz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007) (remanding where the ALJ did not specify the mental demands of the claimant's past work or evaluate whether the claimant could meet those demands despite her bipolar disorder); *Angel v. Barnhart*, 329 F.3d 1208, 1212 (10th Cir. 2003) (remanding where the ALJ ignored evidence suggesting that the claimant required a sterile work environment); *Vincent v. Apfel*, 264 F.3d 767, 769 (8th Cir. 2001) (remanding because the ALJ did not consider whether the claimant's schizophrenia prevented him from coping with the mental demands of his past work).

Had the ALJ conducted a step-five analysis to determine whether Mr. Getch could perform other jobs in the

national economy, the error might be harmless. Neverthe-
less, he did not to do so here, and we cannot fill that gap.
*See Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005)
(requiring that ALJs, at the very least, minimally articulate
the reasons for their decisions in order to facilitate mean-
ingful appellate review); *Steele v. Barnhart*, 290 F.3d 936,
941 (7th Cir. 2002) (noting that the court of appeals must
confine its review to the reasons supplied by the ALJ).
We therefore must remand this case for further consider-
ation.

On remand, the ALJ should address two corollary factual
questions. First, the ALJ must determine whether the
environmental conditions under which Mr. Getch labored
are typical for seam welders or instead represent a depar-
ture from the norm. The vocational expert speculated that
"probably 50 percent" of the available jobs for seam
welders do not require exposure to chemical fumes or
extreme temperatures, A.R. at 327, but guesswork cannot
define the benchmark environment. An ALJ can base
his step-four analysis on the generally accepted job
duties of the claimant's past work, but not every job that
bears resemblance to the claimant's past position can be
equated with it. *Smith*, 388 F.3d at 253. In other words, the
ALJ need not conclude that the claimant is capable of
returning to the precise job he used to have; it is enough
that the claimant can perform jobs substantially like that
one. *See Smith*, 388 F.3d at 253; *Wagner v. Astrue*, 499 F.3d
842, 853 (8th Cir. 2007); *Pinto*, 249 F.3d at 844-45; *see also*
Social Security Ruling 82-61 (explaining that a claimant
who "cannot perform the excessive functional demands
and/or job duties actually required in the former job but

can perform the functional demands and job duties as generally required by employers throughout the economy" should not be found to be disabled). If Mr. Getch's impairments prevent him from performing his old job at his former workplace, he might still be able to return to his past relevant work if the typical seam-welding job does not feature chemical fumes or temperature extremes. Nevertheless, the ALJ should have considered whether the environmental conditions at Mr. Getch's seam-welding job represented an extreme or whether they are the norm for this type of position. *See Smith*, 388 F.3d at 253 (noting that the ALJ should have considered whether excessive functional demands actually required by the claimant's former job were required by other jobs of that type); *Pinto*, 249 F.3d at 848 (remanding where the administrative record failed to show whether the claimant could perform past work as actually or as generally performed). To decide this question, the ALJ must demand more than an off-the-cuff guess.

Second, and perhaps more fundamentally, the ALJ must decide whether Mr. Getch's impairments in fact would prevent him from working around chemical fumes and extreme temperatures. On this question the record is ambiguous. Two doctors recommended that Mr. Getch avoid extreme temperatures, but neither identified other environmental restrictions. On the other hand, a third doctor concluded that temperature extremes would not affect Mr. Getch, but that dust and fumes would. Notably, Dr. Looyenga, Mr. Getch's treating cardiologist, did not identify any environmental limitations at all when asked. As the record now stands, the ALJ conceivably could

conclude on remand that Mr. Getch's impairments are not aggravated by chemical fumes or temperature extremes and, therefore, that he can work where either are present. Without more evidence, however, the record is inconclusive, and the extent of Mr. Getch's environmental limitations is precisely the type of contested factual issue the ALJ should have resolved. *See Angel*, 329 F.3d at 1212 (remanding so that the ALJ could address the evidence suggesting that the claimant required a sterile work environment); *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (remanding so that the ALJ could resolve factual conflicts in the record).

**2.**

Mr. Getch next contends that the ALJ failed to give sufficient weight to the combined impact of his health problems. Mr. Getch correctly observes that an ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe. *See* 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Nonetheless, the ALJ in fact did consider Mr. Getch's health problems in the aggregate, ruling that his impairments were not severe enough, "either singly or in combination," to equal one of the listed impairments. A.R. at 14. In making his assessment, the ALJ also stated that he had considered all of Mr. Getch's symptoms together, along with the objective medical evidence. Accordingly, Mr. Getch's objection fails.

**3.**

Third, Mr. Getch contests the ALJ's finding that his testimony was not fully credible. We defer to an ALJ's credibility determination and shall overturn it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). Mr. Getch quibbles with the ALJ's characterization of his gout complaints, but an ALJ may disregard a claimant's assertions of pain if he validly finds them not credible. *Schmidt v. Astrue*, 496 F.3d 833, 843-44 (7th Cir. 2007). Moreover, although an ALJ may not ignore a claimant's subjective reports of pain simply because they are not fully supported by objective medical evidence, discrepancies between objective evidence and self-reports may suggest symptom exaggeration. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Powers v. Apfel*, 207 F.3d 431, 435-36 (7th Cir. 2000). Here, the ALJ observed that, although Mr. Getch alleged episodes of gout and had taken medication to treat gout symptoms, there was "no description by a physician of an actual gout flare-up in the record." A.R. at 14. The ALJ reasonably discounted Mr. Getch's testimony given the discrepancy between his reports of disabling gout and medical reports documenting Mr. Getch's normal range of motion, ability to walk and stand without significant limitation, and absence of joint swelling or other gout symptoms. It therefore was not patently wrong for the ALJ to conclude that, although Mr. Getch's impairments were real, he had exaggerated their impact on his

ability to work. *See Schmidt*, 496 F.3d at 843-44 (holding that the ALJ did not err in discounting a claimant's reports of pain where they were not supported by the medical record); *Sienkiewicz*, 409 F.3d at 804 (same).

**4.**

Finally, Mr. Getch contends that the Appeals Council erred in declining to remand his case to the ALJ in light of new evidence documenting his gout treatment between November 2004 and September 2005. The Appeals Council will review a case if the claimant submits "new and material evidence" that, in addition to the evidence already considered by the ALJ, makes the ALJ's decision "contrary to the weight of the evidence" in the record. 20 C.F.R. § 404.970(b); *see also Schmidt*, 395 F.3d at 742; *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1990). We evaluate de novo whether the Appeals Council made an error of law in applying this regulation; absent legal error, however, the Council's decision whether to review is "discretionary and unreviewable." *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

Mr. Getch contends that the Appeals Council concluded that his new evidence was not material and thus refused to consider it; that conclusion, he says, constituted a mistake of law that is reviewable by this court. Contrary to Mr. Getch's assertions, however, the Appeals Council did review his new evidence and decided that it did not provide a basis for changing the ALJ's decision. Medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the

administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement. *See* 20 C.F.R. 404.970(b) ("If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."); *Schmidt*, 395 F.3d at 742 (noting that "evidence is material only to the extent that it could have affected the outcome of the ALJ's decision," and declining to consider medical records documenting the claimant's medical condition as it existed after the decision was rendered); *Kapusta*, 900 F.2d at 97 (refusing to consider medical evidence that postdated the ALJ's decision because "the reports postdating the hearing speak only to [the claimant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration"). None of the new evidence proffered by Mr. Getch speaks to his condition at the relevant time period; it pertains only to his allegedly worsening condition in 2004 and 2005—well after the ALJ rendered his decision. If Mr. Getch has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application. *See Kapusta*, 900 F.2d at 97. Where the Appeals Council considers the new evidence along with the rest of the record and declines to remand because there is nothing before it that undermines the ALJ's decision, we shall not review the Council's discretionary decision. *Perkins*, 107 F.3d at 1294.

### Conclusion

We conclude that the ALJ failed to consider adequately the impact of Mr. Getch's workplace environment on his ability to return to his past relevant work as a seam welder. Accordingly, the judgment of the district court is reversed, and this case is remanded to the agency for further proceedings consistent with this opinion.

REVERSED and REMANDED