NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 15, 2009
Decided January 5, 2010

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 09-1132

|  |  |
|---|---|
| ANGELA D. LUSTER, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *Plaintiff-Appellant*, | |
| | |
| v. | No. 07-CV-1009 |
| | |
| MICHAEL J. ASTRUE, | |
| Commissioner of the Social Security | Rudolph T. Randa, |
| Administration, | *Judge*. |
| *Defendant-Appellee*. | |

**O R D E R**

Angela Luster applied for Supplemental Security Income benefits, claiming that since December 5, 2003, she has not been able to work because of depression, high blood pressure, Hepatitis C, a bone disease, and pain. An administrative law judge found that although Luster has a severe combination of impairments, her residual functional capacity allows for light work. Accordingly, the ALJ determined that Luster was not disabled. The district court upheld the ALJ's determination. On appeal, Luster argues that the ALJ should have given controlling weight to her treating physician who opined that she could not work a full day. But because that opinion was based on Luster's complaints of pain, the

credibility of which the ALJ permissibly questioned, and not on objective clinical evidence, the ALJ need not have deferred to the opinion, and we therefore affirm.

## BACKGROUND

Only two witnesses testified before the ALJ. Luster, who was 50 years old and not working at the time of her hearing, testified about her pain and its effect on her. She stated that every day she experiences pain all over her body, can walk only about half a block without getting short of breath, can sit continuously for about twenty to thirty minutes, can stand for about one-half hour, and can lift about ten pounds. She takes prescribed medication to combat the pain. The other witness to testify was a vocational expert. The expert stated that there were jobs that accommodate someone with Luster's background (a GED and limited work history) and who had a residual functional capacity for low-stress and light or sedentary work.

The ALJ received written evaluations of Luster's physical and mental abilities. Luster's treating physician, M. Anjum Razzaq, M.D., completed three work-capacity evaluations. His conclusions were based on Luster's complaints of her pain. Razzaq opined that Luster could continuously sit for about two hours, and could continuously stand for fifteen minutes, but that in an eight-hour day the total time that Luster could stand or sit was about two hours. In addition, Razzaq's notations from Luster's office visits indicate that her muscles had "mild to moderate tenderness." The record also contains three mental evaluations by other professionals. Although Luster had some noted mental deficiencies, these evaluations concluded that she was capable of sustaining simple, low-stress, routine work. In addition to these evaluations, the record contains numerous other physician notes from Luster's visits to Razzaq and other doctors.

The parties do not dispute that Luster's other medical records document impairments for chest pain (secondary to anxiety), fibromyalgia, hypertension, Hepatitis C, and depression with anxiety. These records also describe clinical tests suggesting numerous other possible ailments as well, but either omit a definitive diagnosis or do not explain whether they impair Luster's ability to work.[1] In addition, the record contains Razzaq's

---

[1]The other ailments include leiomyomas that protrude over the external uterine surface, ventricular hypertrophy and mild to moderate diastolic dysfunction, minor stenosis at the left renal artery, possible gout, a bone spur, possible small vessel disease, calcification in the aorta and other vessels, an aneurysm, small kidney cysts, pleural thickening, tendinitis, and possible ischemic disease.

notes of possible conditions, but they do not cite any clinical tests that verify these possibilities.[2]

The ALJ conducted the five-step analysis required under 20 C.F.R. § 416.920(a). At step two the ALJ found a severe combination of impairments consisting of chest pain, fibromyalgia, hypertension, Hepatitis C, and depression with anxiety. But, after determining Luster's residual functional capacity at step four, he found, at step five, that adequate employment was available even accounting for her limitations. In reaching this conclusion, the ALJ ruled that Razzaq's opinion that Luster cannot work a full day should not be given controlling weight because it was based solely on Luster's less than credible complaints and had no other clinical support. The district court affirmed these rulings.

**ANALYSIS**

This court will affirm the ALJ's denial of disability benefits so long as the decision is not based on legal error and is supported by substantial evidence, meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ must build an accurate and logical bridge between the evidence and his conclusions, and this court must confine its review to those reasons that the ALJ supplies for the decision. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). If an ALJ's decision contains inadequate evidentiary support or a cursory analysis of the issues, this court will reverse. *Lopez*, 336 F.3d at 539.

Luster principally argues that the ALJ erred because he did not give controlling weight to the opinion of her treating physician, Razzaq, that she could never work a full day. A treating physician's opinion is entitled to controlling weight so long as it is supported by objective medical evidence and is consistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). But an ALJ may reject a treating physician's opinion in the absence of such objective evidence or if substantial evidence in the record contradicts the physician's findings. 20 C.F.R. § 404.1527(d)(2); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). When an ALJ discounts the opinion of the treating physician, the ALJ must articulate good reason for doing so. 20 C.F.R. § 404.1527(d)(2); *see Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). This court upholds

---

[2]Razzaq's notes refer to "CVA," "History of CVA," "gastritis," "menorrhagia," "arthralgia," "bilateral lower extremity pain," and "hip pain."

all but the most patently erroneous reasons for discounting a treating physician's assessment. *See Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

Here, the ALJ provided good reasons for discounting Razzaq's conclusions. The ALJ explained that Razzaq never supported Luster's claimed inability to work a full day with clinical findings or diagnostic tests; Razzaq merely recorded Luster's complaints about her self-described limitations. In particular, upon his physical examinations of Luster, Razzaq did not find objective factors for the pain that Luster said prevented her from working. Razzaq found only "mild to moderate tenderness" of her muscles. Razzaq failed to reconcile the objective signs of moderate pain, and Luster's management of her pain through medication, with his more extreme conclusion that Luster could not tolerate more than two hours of standing or two hours of sitting in an eight-hour period. This unexplained inconsistency supports the ALJ's conclusion to discount Razzaq's opinion on the ground that he merely repeated Luster's self-reported symptoms without acknowledging the objective evidence to the contrary. *See Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

In addition, the notes that Razzaq made referring to other possible conditions do not justify his conclusion that Luster could not work because they, too, lack clinical support. For example, his notes about "CVA" and "History of CVA" (presumably a reference to a cerebral stroke, STEDMAN'S MEDICAL DICTIONARY 2330 (27th Ed. 2000)), are devoid of any clinical foundation. In fact, as verified by Luster's counsel at the hearing, Razzaq never diagnosed Luster with having had a stroke. And even after a CT scan revealed *no* sign of a cerebral stroke, Razzaq puzzlingly continued to note "CVA" in Luster's records. The absence of clinical testing, coupled with contrary objective evidence, regarding Razzaq's notations undermine their reliability.

Luster next argues that the ALJ erred in determining her residual functional capacity by ignoring evidence of her other ailments that did have clinical support, such as conditions footnoted above. But Luster did not meet her burden of proving the effect of these maladies on her ability to work. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000); 20 C.F.R. § 404.1512 ("you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, *if material to the determination* of whether you are blind or disabled, *its effect on your ability to work*") (emphasis added). Nothing in the record explains how these ailments affect her capacity to work and hold a job. For instance, nowhere does Luster explain the effect of "mild to moderate diastolic dysfunction" such that the ALJ could build the "logical bridge" from the ailment to the conclusion that it precludes employment. *See Jeralds v. Richardson*, 445 F.2d 36, 38-39 (7th Cir. 1971) (despite evidence showing existence of medical conditions, claim failed because "no showing was made . . . that these conditions rendered Plaintiff disabled").

Last, Luster argues that the ALJ impermissibly discounted the credibility of Luster's subjective claims about her ongoing pain and inability to work. "We defer to an ALJ's credibility determination and shall overturn it only if it is 'patently wrong.'" *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported. *See Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)." *Getch*, 539 F.3d at 483. This case is no exception. Luster believes that if the ALJ had accepted all of the medical evidence, he would have found her testimony credible. But, as noted above, the burden was on Luster to show that her claimed maladies precluded gainful activity. *Clifford*, 227 F.3d at 868; 20 C.F.R. § 404.1512. She did not do this, and as such the ALJ was not wrong in concluding that her claimed limitations were not supported by the evidence in her medical records.

## CONCLUSION

For the foregoing reasons, the district court's judgment upholding the decision of the ALJ is AFFIRMED.