**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 22, 2012[*]
Decided February 28, 2012

*Before*

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-2039

|  |  |
|---|---|
| BRENDA M. MCFADDEN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Central District of Illinois. |
| *v.* | No. 10-1116 |
| MICHAEL J. ASTRUE, | Michael M. Mihm, |
| Commissioner of the Social Security | *Judge.* |
| Administration, | |
| *Defendant-Appellee.* | |

**O R D E R**

Brenda McFadden claims that she is disabled by a litany of ailments, including osteoarthritis, sciatica, and depression. She applied for disability insurance benefits and social security income, but the Social Security Administration denied her application at all stages, and a district judge upheld that denial. She appeals, arguing that the administrative

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

law judge failed to sufficiently develop the record or account for all of her impairments. We conclude that substantial evidence supports the ALJ's determination that she was not entitled to benefits, and affirm.

McFadden, 52, applied for DIB and SSI in 2007, alleging that her disability began in early 2005. She testified that she injured her back while lifting patients as part of her caregiving job at a home for disabled adults; she took medical leave for several months. After MRIs showed only mild joint degeneration and slight wedging of a disc, her family-practice physician and a consulting orthopedic surgeon diagnosed her with a muscle strain.

She returned to work, but still experienced pain in her back and on the right side of her body. A physical therapist in fall 2005 approved her return to work with a 40-pound lifting limitation. McFadden soon assumed a less physically demanding job in which she spent time with disabled adults at their workplace and did not have to lift as much. But in late 2006 her back pain flared up and she again took leave from work.

McFadden saw an orthopedic surgeon in early 2007 for additional treatment. The surgeon could not pinpoint the source of her pain, however, since past MRIs did not show any compression of her nerves and a current x-ray of her spine showed only mild degenerative disc disease. The surgeon ordered another MRI, but it did not reveal anything new.

Also in early 2007, two state-agency physicians evaluated McFadden in conjunction with her application and proposed minimal work limitations for her. A non-examining, consulting physician opined that, based on McFadden's complaints of back pain, she had no postural limitations and could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 6 hours per workday, and sit for 6 hours per workday; this opinion was reviewed and approved a few months later by another state-agency physician.

McFadden's chiropractor, Dr. Jeffrey Dickhut, suggested work restrictions for her in spring 2007. Dr. Dickhut described McFadden as limited by sciatica, lumbar pain, muscle spasms, and deconditioning (a reduction in muscle strength and other physical functioning that is common when a patient is recovering from a back injury); he recommended that she not lift more than 10 pounds from the floor or 15 pounds from the waist nor sit for more than 30 minutes at a time.

Two of McFadden's family physicians saw her in 2008 and 2009 and submitted evaluations suggesting lifting limitations similar to those prescribed by Dr. Dickhut as well as postural limitations. In mid-2008 Dr. Ziad Musaitif submitted a medical assessment, in

which he opined that McFadden's back pain limited her capacity to bend, stoop, and climb; he said that she could lift no more than ten pounds. He also reported that she suffered from depression, though it was controlled well with medication. In early 2009 Dr. Wade Carlson next submitted an evaluation saying that McFadden's osteoarthritis in her back and right knee and hip limited her capacity to bend, stoop, and climb. He restricted her to lifting no more than 20 pounds at one time and 10 pounds frequently.

Besides suffering from sciatica and back pain, McFadden also experienced other infirmities, including osteoarthritis in her knees, osteoarthritis and bone spurs in her right foot, and sleep apnea. She took medication for depression, restless leg syndrome, and an overactive bladder. She also complained of a few headaches, and one MRI revealed an enlarged heart. She also suffered an episode in which her boyfriend assaulted her (which she now asserts caused her to develop post-traumatic stress disorder), and led to her being admitted to an emergency room.

At her hearing before the ALJ in 2009, McFadden testified about her ailments and their effect on her daily living. She stated that her back pain and sciatica most limited her activities, preventing her from sitting for more than 30 minutes, standing for more than 15 minutes, or walking further than a quarter mile at a time. She said that she usually had to lay down every few hours because after a while even sitting became too painful. She also could not lift a full basket of laundry, stand long enough to cook a meal, and had difficulty getting in and out of a bathtub and climbing up and down stairs.

A vocational expert testified that McFadden could perform many jobs despite her impairments. The expert said that a person of McFadden's age who could occasionally climb, stoop, kneel, crouch, or crawl, who could frequently change positions, and who could not lift more than 10 pounds from the floor or 15 pounds from the waist could work in McFadden's past job as an office clerk or secretary, and also as a receptionist, telemarketer, cashier, quality control inspector, or parts inspector (which apparently entails testing and measuring parts for defects).

The ALJ denied McFadden's claim for benefits after applying the five-step evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ concluded that McFadden had not worked since her alleged onset date (Step 1); her sciatica (which the ALJ addressed together with her osteoarthritis) was a severe impairment but her other impairments were not (Step 2); her impairments did not meet or equal a listed impairment (Step 3); she had the residual functional capacity to perform her past work as an office clerk, as well as other sedentary jobs that did not require lifting more than 10 pounds from the floor or 15 pounds from the waist, allowed for alternating between sitting and standing every half hour, and required no more than occasional climbing, stooping, bending, kneeling, crouching, or

crawling (Step 4); and other suitable jobs were available, including work as a receptionist, telemarketer, cashier, quality control inspector, and parts inspector (Step 5).

After the Appeals Council denied McFadden's request for review, she turned to the district court, which granted the Commissioner's motion for summary affirmance because it found that the RFC determination was supported by substantial evidence. McFadden sought reconsideration, which the district court denied.

On appeal McFadden notes that the ALJ's RFC determination overlooked some of her ailments, including an enlarged heart, migraines, sleep apnea, and restless leg syndrome. Indeed an ALJ may not ignore entire lines of evidence contrary to the RFC determination, but she need not discuss every piece of evidence in the record. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Significantly, McFadden does not hint at how any of these allegedly overlooked ailments might have been disabling. Nothing in the record, for instance, suggests that McFadden's enlarged heart negatively affected her, that her occasional headaches were debilitating, or that her treatment for sleep apnea and restless leg syndrome was ineffective. McFadden's ailments are discussed further in some of the evidence she submitted after issuance of the ALJ's decision, but we may not consider evidence submitted after the decision. *See Rice*, 384 F.3d at 366 n.2; *Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

McFadden also mentions that the ALJ ignored Dr. Musaitif's opinion, which assessed her capacity to bend, stoop, or climb as reduced by 20% to 50%. It is true that an ALJ must evaluate all medical opinions in the record and give "good reasons" for not giving "controlling weight" to the opinions of treating physicians, *see* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010), but any error by the ALJ here in not addressing Dr. Musaitif's opinion was harmless. The opinion did not identify any objective medical findings on which it was based, and the ALJ's RFC findings incorporated limitations on McFadden's postural functions, which the record as a whole supports. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *Rice*, 384 F.3d at 371.

McFadden next argues that the ALJ erred by failing to order a medical consultation to assess the severity of her mental impairments. An ALJ has a responsibility to request a consultative examination if the applicant's medical sources do not provide enough information to evaluate whether the applicant is disabled, 20 C.F.R. §§ 404.1517, 416.917; *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009); *Barnett v. Barnhart*, 381 F.3d 664, 669 (7th Cir. 2004), but here the evidence was neither unclear nor incomplete. The ALJ explained that McFadden was taking medication to treat her depression and that no treating

physician suggested work-limitations for McFadden because of her depression, and McFadden has not suggested why this explanation is flawed.

McFadden also argues that the ALJ erred by failing to ensure that all of the letters submitted by her friends and family were introduced into the record, and that the excluded letters would have further apprised the ALJ of her limitations. But a claimant represented by counsel is presumed to have made her "best case" before the ALJ, *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007), and here McFadden's attorney explicitly told the ALJ that the record was complete even after the ALJ remarked that only two pieces of third-party correspondence were in the record.

Last, McFadden argues that a remand is necessary for consideration of new evidence that, she says, has just become available and warrants remand—namely, records concerning her continuing complaints of back pain and worsening depression and PTSD. But none of this "new" evidence provides a basis for remand. Some of the evidence predated the ALJ's decision and so is not new, s*ee Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005), some is duplicative of that which is already in the record and likely would not change the ALJ's decision, *see id.*, and some (i.e., that which shows her worsening mental impairments) is not material because it does not describe McFadden's condition in the period before the ALJ rendered her decision. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008). If any of her conditions have worsened since the ALJ issued her decision, then she may reapply for benefits (for disabilities she developed before December 31, 2011, the date she was last insured). *See id.*

The district court's judgment is AFFIRMED.