**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 21, 2018[*]
Decided November 26, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-1594

| | |
|---|---|
| KENNEDY LAFAYETTE,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Eastern District of Wisconsin. |
| *v.* | No. 17-CV-86 |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br>    *Defendant-Appellee*. | David E. Jones,<br>*Magistrate Judge*. |

## O R D E R

Kennedy Lafayette, who has received medical treatment for pain resulting from his lifelong scoliosis, appeals from the district court's judgment upholding an administrative law judge's ruling that Lafayette was not disabled. The ALJ's decision is supported by substantial evidence, so we affirm.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Lafayette has unsuccessfully sought disability benefits twice. His first application came after he quit his job at a medical center, where he had worked as an x-ray file clerk for 10 years, from 2000 to 2010. He left that job because the back pain from his scoliosis interfered with the additional duties—pushing beds and patients—that the center had recently assigned him. Three years after he was denied benefits, he applied again. This time he argued that he was disabled because of his scoliosis plus other issues, such as gastroesophageal reflux disease, anemia, weight issues, and stomach pain. An ALJ conducted a hearing on his claim, followed the five-step evaluation process, *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), and issued another unfavorable decision. We now examine that ruling.

The ALJ ruled that Lafayette had the residual functional capacity to perform some sedentary work, such as an information clerk, office helper, inspector, or assembler. In reaching this conclusion, the ALJ determined that Lafayette's allegations of disabling pain and limitations were "not completely credible." The ALJ noted three respects in which Lafayette was not believable. First, although Lafayette had a long history of scoliosis, he had successfully worked for years, despite its presence. Second, Lafayette received treatment for his back pain in 2014, and his 2015 medical records did not report any flare-ups or difficulties. Finally, Lafayette acknowledged that he had been taking college-level courses since 2012, which required him to sit and stand for hours every day in class, in the library, and while taking public transportation.

The ALJ also assessed the medical opinions. She placed great weight on the treatment notes of Lafayette's treating physician, Dr. Kern Reid, but gave little weight to Dr. Reid's answers to the agency's diagnostic questionnaire. In those answers, Dr. Reid limited Lafayette to just 4 hours of standing, sitting, and walking in an 8-hour day. The ALJ explained that those answers conflicted with Dr. Reid's treatment notes and the opinions of the consulting doctors. The treatment notes reflected that Lafayette was adequately treated for a vitamin D deficiency, costochondritis (pain in the ribs), vertigo, obesity, eczema, and gastroesophageal reflux disease. The ALJ concluded that these conditions caused only "minimal" limitations, both "singly and in combination." Lafayette's severe impairments, based on the notes, were scoliosis, anemia, and hemorrhoids. But the notes from 2015 state that Lafayette's anemia was resolved, report that he had no debilitating limitations from his hemorrhoidectomy, and do not mention any back pain. The ALJ took the latter omission to mean that Lafayette's pain was managed with medication. The ALJ relied on the consulting doctors who opined that Lafayette could perform sedentary activity with a 20-pound lifting restriction, a view echoed by one of the state medical consultants. Based on these notes and reports, the

ALJ ruled that benefits were not warranted. Lafayette's challenges to this decision, administratively and in the district court, were unsuccessful.

On appeal, Lafayette first argues that the ALJ failed to consider the combined weight of his impairments, but we disagree. The ALJ properly evaluated all of the limitations that arose from Lafayette's impairments, even those that were not severe, and their combined impact on his residual capacity to work. SSR 96–8p; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The ALJ found that the minor impairments were all treated and caused only "minimal" limitations, both singly and together. Likewise, the treatment notes showed that the severe impairments (scoliosis, anemia, and hemorrhoids) were resolved, well-managed, or showed no debilitating residual limitations. The ALJ thus considered Lafayette's health problems in the aggregate, permissibly ruling that Lafayette did "not have an impairment or combination of impairments" equal to one of the listed impairments. *See Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

Lafayette next complains that the ALJ failed to follow the "treating physician rule" in considering the sitting and standing limitations that Dr. Reid described in answers to the diagnostic questionnaire. Thus, Lafayette concludes, the ALJ erred in ruling that he could handle some sedentary work. Under the treating-physician rule, a treating doctor's opinion generally receives controlling weight if it is consistent with the record. *See* 20 C.F.R. § 404.1527(c)(4). (This rule has been abrogated, but it applies to claims, like Lafayette's, filed before March 27, 2017. *See* 20 C.F.R. § 404.1527.) But the ALJ permissibly discredited Dr. Reid's answers to the diagnostic questionnaire because they were inconsistent with his treatment notes, *see* 20 C.F.R. § 404.1527(c)(4); *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016); *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006). Moreover, "[w]eighing conflicting evidence from medical experts … is exactly what the ALJ is required to do," *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ did just this by considering the opinions of medical consultants who opined that Lafayette could perform sedentary activity with a lifting restriction of 20 pounds. Because the ALJ's determination of Lafayette's residual work capacity was consistent with his treating doctor's notes and the opinions of other doctors, it was supported by substantial evidence. *See Rice v. Barnhart*, 384 F.3d 363, 370–71 (7th Cir. 2004).

Lafayette finally protests, unpersuasively, that the ALJ improperly discounted as "not entirely credible" his subjective complaints that his back pain disabled him from all work. The "not entirely credible" formulation is one that this court has repeatedly derided as "meaningless boilerplate." *Parker v. Astrue*, 597 F.3d 920, 921–22 (7th Cir.

2010). But the formulation does not require a remand if the ALJ identified legitimate reasons for discrediting the claimant's testimony. *See Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). The ALJ did so here. She explained that: (1) Lafayette worked for years despite back pain and quit only after his supervisor assigned him additional exertional duties; (2) Lafayette received treatment for his back pain in 2014, and the lack of flare-ups in 2015 suggested that Lafayette's back condition was stable (as too were his anemia and hemorrhoid conditions); and (3) Lafayette had been able to sit and stand for hours daily while getting to and taking his college level courses since 2012. Thus, the ALJ "properly considered the degree to which the objective medical evidence supported the degree of severity of [Lafayette's] subjective complaints." *Rice*, 384 F.3d at 371. Because the record adequately supports the ALJ's credibility ruling, *see Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010), we cannot say that her determination was "patently wrong," *see Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

AFFIRMED