In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 05-1507

SANDRA K. SIMS,

*Plaintiff-Appellant*,

*v.*

JO ANNE B. BARNHART,

*Defendant-Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:04-cv-536-LJM—**Larry J. McKinney**, *Chief Judge*.

_____

ARGUED JANUARY 25, 2006—DECIDED MARCH 22, 2006

_____

Before POSNER, MANION, and WOOD, *Circuit Judges*.

POSNER, *Circuit Judge*. Sandra Sims was turned down by
an administrative law judge for social security disability
benefits sought by her on the ground that she is severely
impaired by somatoform disorder. She appeals from the
district court's rejection of her challenge to the admin-
istrative law judge's decision. That decision is exceptionally
thorough and in trying to pick it apart Sims's lawyer shows
a lack of awareness of the limitations of "substan-
tial evidence" review, especially in a case such as this in
which the claimant alleges a somatoform disorder. We
confine this opinion to the difficult proof issues raised by

such an allegation, disposing of Sims's other grounds in an unpublished order issued today.

The term "somatoform disorder" refers to what used to be called "psychosomatic" illness: one has physical symptoms, but there is no physical cause. This is a well-attested phenomenon. E.g., *White v. Barnhart*, 415 F.3d 654, 656 n. 1 (7th Cir. 2005); *Carradine v. Barnhart*, 360 F.3d 751, 753-54 (7th Cir. 2004); *Vaughn v. Nissan Motor Corp. in U.S.A., Inc.*, 77 F.3d 736, 737 (4th Cir. 1996). The problem in the disability context is proof (and it is a problem for the reviewing court as well as for the administrative law judge), though it is a problem only when the severity of the symptoms that are claimed to be disabling is in dispute. If you are disabled, you are entitled to disability benefits even if no cause for your disability can be assigned. E.g., *Carradine v. Barnhart*, *supra*, 360 F.3d at 753; *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989). The problem of proof arises when the symptoms are reported by the claimant but not verified by medical experts. The classic example is pain. Its existence cannot be verified, and since a person can experience intense, disabling pain even though no physical cause can be found, there is great difficulty in determining whether the person really is experiencing the pain that he reports. In such a case, the administrative law judge must of necessity base decision on the credibility of the claimant's testimony. Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying. Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported, as in *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001), can the finding be reversed. E.g., *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th

Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Sims's case depends critically on her contention, for which specialists have found no organic basis, that she has tunnel vision. (Her other claimed disabilities have no possible merit, as explained in our accompanying, unpublished order.) It is possible to have severe vision problems that have no organic cause; the medical literature on somatoform disorder identifies vision problems— including tunnel vision—as being among the somatoform symptoms. E.g., Deborah N. Black *et al.*, "Conversion Hysteria: Lessons from Functional Imaging," 16 *J. Neuropsychiatry & Clinical Neurosciences* 246 (2004); Hirofumi Ohkubo, "Visual Field in Hysteria—Reliability of Visual Field by Goldmann Perimetry," 71 *Documenta Ophthalmologica* 61 (1988). And, to repeat, if a claimant's symptoms are severe enough to be disabling, the fact that they have no organic cause is irrelevant. Sims might have been able to show this. One of the medical reports states that her field of vision is only 5 degrees. A normal field of vision is 180 to 200 degrees, Jill Sardegna & T. Otis Paul, *Encyclopedia of Blindness and Vision Impairment* 241 (1991); Richard E. Simmons & Donald A. Keller, *One Pair for a Lifetime* 18 (1979), and a field of vision below 10 degrees is disabling per se under the "grid" that the Social Security Administration uses to streamline disability determinations. 20 C.F.R. pt. 404, subpt. P, app. 1, § 2.03A. But Sims has abandoned that route, and can obtain benefits only by demonstrating that she indeed has a disabling somatoform disorder.

She was given several tests and the results of all of them (not just the one we mentioned) indicated that she indeed has tunnel vision. But just as with the test for impaired peripheral vision that one has to pass to obtain a driver's

license, the tests for tunnel vision are valid only if the patient cooperates. Joseph C. Thompson *et al.*, "Field of Dreamers and Dreamed-Up Fields: Functional and Fake Perimetry," 103 *Ophthalmology* 117, 123 (1996). So there is always a risk that the patient is a malingerer. *Id.*; S. Beatty, "Psychogenic Medicine: Non-Organic Visual Loss," 75 *Postgrad. Med. J.* 201, 204 (1999); Neil R. Miller & James R. Keane, "Neuro-Ophthalmologic Manifestations of Nonorganic Disease," in *Walsh and Hoyt's Clinical Neuro-Ophthalmology* 1765, 1766 (1988); Roger G. Kathol *et al.*, "Functional Visual Loss: I. A True Psychiatric Disorder?," 13 *Psychological Med.* 307, 309-11 (1983). And therefore the results of the tests administered to Sims were not decisive on whether she really has a disabling somato-form disorder. In such a case, the administrative law judge is entitled to require additional evidence. Cf. *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005); *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002).

Where might such evidence be found? The type of somatoform disorder that produces symptoms such as tunnel vision (the type that used to be called "hysteria" and now is called "conversion disorder," Black *et al.*, *supra*; see also Kathol *et al.*, *supra*, at 308) need not also produce symptoms that a psychiatric examination would reveal, the way suicidal ideation might evidence depression or agoraphobia anxiety or paranoid delusions schizophrenia. But the article by Black and his associates indicates that brain scans may be able to distinguish real from feigned symptoms of conversion disorder (apparently, organic brain disease is present in a majority of cases of conver-sion disorder, Susan Dufel, "Conversion Disorder," Apr. 15, 2005, http:www.emedicine.com/emerg/topic112.htm.), and Sims had not had a brain scan. In addition, the symptoms of conversion disorder are often precipitated by stress, *id.*;

American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR)* 498 (4th ed. 2000), and a psychiatric examination might determine whether the claimant was experiencing or had recently experienced stress. No such inquiry was conducted either. As a result of Sims's failure to produce evidence beyond the results of the vision tests, the administrative law judge was entitled to reject her claim to be totally disabled as a consequence of somatoform disorder.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*