NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 27, 2010
Decided July 14, 2010

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-2851

| | |
|---|---|
| ANNETTE GOBLE, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of |
| | Wisconsin. |
| *v.* | |
| | No. 08-cv-529-bbc |
| MICHAEL J. ASTRUE, Commissioner of | |
| Social Security, | Barbara B. Crabb, |
| *Defendant-Appellee.* | *Judge*. |

**O R D E R**

Annette Goble seeks review of the denial by an Administrative Law Judge of her application for disability insurance benefits. Specifically, she contests the ALJ's conclusions that her testimony was not credible and that she retained a residual functional capacity for light work. Because the ALJ impermissibly substituted her own judgment for that of the treating physicians, we reverse and remand.

In November 2004, Goble applied for disability insurance benefits, claiming an inability to work as of that date due to fibromyalgia, chronic fatigue syndrome, herniated and degenerative discs, and chronic migraines. Goble was born in 1958, is licensed in practical nursing, and worked as a licensed practical nurse, teacher's assistant and

pharmacy technician.  The local disability agency denied her application, and the ALJ reconsidered the denial at a hearing in May 2007.

At the hearing Goble presented medical records from treating physicians including Goble's family practitioner, Dr. Dale Hadland, who first diagnosed her with fibromyalgia in 1995.  Since 2004, he has prescribed Cymbalta, Skelaxin, and methadone for her fibromyalgia and chronic back pain.  He wrote a letter in 2006 stating: "I believe the patient is unemployable.  She is unable to sit, stand, bend, and/or really function mentally in any type of employment situation secondary to her chronic pain syndrome and muscle tightness/pain associated with the fibromyalgia."  Goble also presented medical records from internist Dr. Okechukwu N. Iwu, who first saw her in October 2006.  He noted that she had severe fibromyalgia, fairly significant degenerative joint disease, inability to sleep, and mild major depression.  He later increased her methadone dosage.  In April 2007, Dr.Iwu wrote Goble's lawyer saying that she was under his care "for chronic pain syndrome, primarily due to fibromyalgia, which is fairly crippling."  Dr. Iwu said that Goble was unable to sit or stand for more than 5 or 10 minutes without aggravating her pain and needed assistance with activities of daily living involving arm extension.

Goble also saw several consulting physicians, including psychologist Lynne E. Johnson, who performed a mental-status evaluation in August 2005 and concluded that Goble had developed a depressive disorder as a reaction to the pain and associated limitations of fibromyalgia.  In 2005 two state-agency physicians reviewed the medical record and agreed that Goble suffered from fibromyalgia and neck and back pain, but also concluded that she still could lift 10 pounds frequently and 20 pounds occasionally, and could stand, walk, or sit 6 hours in an 8-hour work day.

At the hearing Goble testified that she cannot sit for more than 5 or 10 minutes at a time, or stand for more than a minute, or walk much beyond 100 yards.  She added that she cannot raise her arms above shoulder height and drops things all the time.  She also testified that she is unable to sleep.  Goble said that she can drive, feed herself, brush her teeth, and manipulate buttons and zippers without assistance.  She stated that she has difficultly concentrating and maintaining attention.  Goble recounted that she and her husband had lived in Utah for 6 months, and when she was there, her fibromyalgia was somewhat better.  She testified that she had taken methadone for pain for four years, but it was no longer helping.  To avoid increasing her dosage again, she recently switched to morphine.  She testified that her pain prevents her from getting out of bed 2 or 3 days a week.

Three other witnesses testified at the hearing.  Dr. Andrew Steiner, a specialist in physical medicine and rehabilitation, was called by the ALJ as a neutral medical expert.

Dr. Steiner, who did not examine Goble, opined that her pain is primarily attributable to fibromyalgia and not to degeneration of the spine. He said that he found no "objective evidence" in her medical records supporting Goble's testimony about experiencing problems with reaching, gripping, grasping, and holding items, and he pronounced Goble capable of performing light work with occasional overhead reaching and no limitation on the use of her hands. Edward J. Utities, a vocational expert, testified that a person with the residual functional capacity described by the ALJ could not perform Goble's past work but could perform one of the 8,000 jobs in Minnesota for banders-and-cellophaners, wrapping machine operators, garment folders, polypackers and heat sealers, and other unskilled wrapping and packing positions. Kent Goble, Goble's husband, testified that her condition had worsened in the two years preceding the hearing. He said that Goble drops things, has memory lapses, and has difficulty staying on task.

In July 2007 the ALJ issued her decision finding Goble not disabled. Under the five-step sequential analysis, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that Goble had not engaged in substantial gainful activity since November 2004. At step two, she found that Goble suffers from multiple severe impairments: fibromyalgia or myofascial pain, degenerative disc disease of the cervical, thoracic and lumbar spine, migraine headaches, depression, and chronic pain syndrome. At step three, relying on the testimony of Dr. Steiner, the ALJ concluded that these impairments do not alone or in combination meet or medically equal a listed impairment. The ALJ found that Goble retains the residual functional capacity to perform unskilled, light work. Jobs in this category require lifting 10 pounds frequently and 20 pounds occasionally, and standing or walking 6 hours and sitting 2 hours in an 8-hour work day. The ALJ limited the work, however, to routine, repetitive 3- to 4-step jobs that do not require more than occasional reaching overhead. The ALJ did not entirely credit Goble's testimony about the intensity, duration, and limiting effect of her symptoms. The ALJ viewed Goble's statements as inconsistent with notes of treating physicians describing her as alert and well oriented and with Goble's own description of her range of daily living activities. The ALJ also thought it significant that Goble had not completed a recommended physical-therapy program, had temporarily lived in Utah without taking medication, and had previously held full-time jobs despite her impairments and had not sought less-demanding work. Relying on the testimony of the vocational expert, the ALJ concluded that Goble cannot perform her past work but still is employable because there are available jobs that can be performed by someone with her residual functional capacity. The ALJ's decision became the final decision of the commissioner when the Appeals Council denied Goble's request for review on May 16, 2008.

Goble presents two main arguments: (1) the ALJ's credibility determination is patently wrong, and (2) the ALJ's RFC determination is not supported by substantial evidence.

Goble first argues that the ALJ wrongly concluded that her account of her limitations is contradicted by objective medical evidence. She argues that not only is her pain consistent with the objective evidence, but that no objective support is required for her subjective assertions of pain. She cites *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996), for the proposition that fibromyalgia symptoms are entirely subjective, and *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008), for the proposition that a claimant may appear to be doing better at certain points without undermining her claim of disability.

We will not overturn an ALJ's credibility finding unless it is "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). An ALJ should compare the consistency of a claimant's statements against objective information in the medical record, SSR 96-7p, 1996 WL 374186, at *6-7, and we will disturb an ALJ's credibility determination only if that finding is unreasonable or unsupported, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).

The ALJ acted unreasonably when she rejected Goble's subjective allegations of pain and of medication side effects on the ground that Goble appeared "alert and oriented, pleasant and cooperative" in the presence of treating physicians. None of the doctors who made these observations viewed them as inconsistent with chronic pain, and in fact continued to prescribe methadone and other medications as well as batteries of tests in response to Goble's complaints of pain. We have deemed it improbable that a claimant would undergo pain-treatment procedures such as heavy doses of strong drugs in order to increase chances of obtaining disability benefits or that doctors would prescribe these treatments if they thought she were faking. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 646 (7th Cir. 2007); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004). Without medical evidence suggesting a discrepancy between Goble's alleged chronic pain and her alert appearance, the ALJ impermissibly substituted her own judgment for that of the physicians. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). No medical provider or witness, not even Dr. Steiner, the medical expert, mentioned any inconsistency between complaining of chronic, disabling back pain and appearing alert and pleasant during a visit to the doctor. In addition, we question the wisdom of penalizing a claimant for cooperating during physical evaluations. In fact a claimant's failure to cooperate may be sufficient reason in itself to reject her testimony. *See, e.g., Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (explaining that ALJ was free to conclude that claimant's lack of cooperation during evaluations of her physical capacity undermined the credibility of her complaints of pain).

In addition the ALJ acted improperly when she gave no weight to Goble's limitations in daily living on the grounds the limitations were "due to pain or other subjective allegations such as numbness."  A lack of objective medical evidence does not necessarily mean that an ALJ may discredit a claimant's subjective complaints of pain:

> [T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.

SSR 96-7p, 1996 WL 374186, at *6.  Claims of disabling pain "based solely on the claimant's subjective complaints" cannot be discredited simply because of a lack of objective medical confirmation, although the lack of confirmation can factor into the analysis.  *Parker v. Astrue*, 597 F.3d 920, 922-923 (7th Cir. 2010); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).  Pain can be severe to the point of being disabling even though it is entirely in the claimant's mind.  *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006); *Sims*, 442 F.3d at 537-38; *Carradine*, 360 F.3d at 753-54; *Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995) (per curiam); *Latham v. Shalala*, 36 F.3d 482, 484 (5th Cir. 1994); *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989).  Goble acknowledged that she can drive short distances, cook frozen pizza, and perform other simple tasks, but she also maintained that she cannot sit for more than 5 to 10 minutes, stand still for more than a minute, or walk more than 100 yards.  A claimant's ability to perform limited and sporadic tasks does not mean she is capable of full-time employment.  *See Carradine*, 360 F.3d at 755; *Clifford*, 227 F.3d at 872; *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000).  The ALJ did not refute Goble's statements or explain how they are compatible with the demands of a full-time job.

The ALJ's other reasons for rejecting Goble's assertions of pain are also problematic. The ALJ noted, for example, that Goble worked for many years after her diagnosis of fibromyalgia.  But a claimant may force herself to work for years despite suffering from fibromyalgia, *see Hawkins v. First Union Corp.*, 326 F.3d 914, 918 (7th Cir. 2003), and Goble testified how much she loved working and how hard it was for her to give it up.  The ALJ also remarks several times that Goble's condition improved while she was off of medication for a few months in Utah.  Goble moved to Utah at the encouragement of her doctors in the hope that the drier climate would improve her medical condition, but she testified that she had no insurance coverage at the time and left after a few months to be closer to her children.  It was questionable for the ALJ to conclude that her temporary improvement implies that she does not actually require serious narcotics.  The ALJ also cited a nurse's notation that Goble refused to set up psychotherapy or physical therapy, and a note from

Dr. Iwu that she was discharged from a physical therapy program after she cancelled her appointment. The ALJ never questioned Goble about her reasons for non-participation, however, or discussed Dr. Iwu's recommendation that she continue her physical therapy independently in a home program. Goble asserts that she discontinued physical therapy due to problems with insurance coverage. Without further information this non-participation cannot support the ALJ's credibility determination.

We also question a decision that casts doubt on a claimant's disability due to her ability to complete "multiple application and appeal forms in detail." On remand the ALJ may find valid reasons to impugn Goble's credibility, but the act of applying for disability benefits should not be among them.

Goble next contends that the ALJ's finding of a residual functional capacity for light work is not supported by substantial evidence. She first argues that the ALJ failed to explain the weight given Dr. Steiner, the medical expert. She notes that, when a treating source's opinion is not given controlling weight, an ALJ is required to explain the weight given to the various medical sources, *see* 20 C.F.R. § 404.1527(f)(2)(ii*)*. In this case the ALJ gave greatest weight to Dr. Steiner's conclusions for the same reason that she rejected Goble's subjective complaints of pain—the perception that the treating physicians' observations were inconsistent with their conclusions. Accordingly, as this reasoning is improper in the credibility analysis, the relative weight of the physicians' testimony in the RFC must be reevaluated as well.

Goble also asserts that the ALJ disregarded ample clinical evidence of a correlation between her back disorders and her arm and hand limitations. She argues that the ALJ must consider the medical opinions in the record, *see* 20 C.F.R. § 404.1527(b), and that the ALJ failed to consider evidence of her arm and hand limitations provided by Dr. Kioski, Dr. Perra, and Dr. Tierney.

An ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009). But an ALJ need not mention every piece of evidence, so long she builds a logical bridge from the evidence to her conclusion. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

The ALJ properly rejected Goble's allegations of arm and hand limitations on the ground that tests repeatedly show few neurological effects or loss of strength, grip, or range of motion. Dr. Perra and Dr. Kioski's notes would not change that analysis, as the notes are mainly Goble's self-reports of her symptoms, and in any event took place in 2003, before the

alleged period of disability.  Dr. Perra, for example, noted that Goble "says she has been having complaints recently" of a decreased grip, but upon physical examination found her strength normal.  And contrary to Goble's assertion, the ALJ's decision did include a discussion of Dr. Tierney's finding of "give way weakness of the right extremity," even if she did not mention Dr. Tierney by name.

Goble also argues that the ALJ selectively analyzed the record of her mental impairments.  She contends that the ALJ improperly rejected psychologist Johnson's conclusions that Goble would have difficulty working at a reasonable pace or tolerating workplace stressors.  Contrary to Goble's assertion, the ALJ accepted her moderate difficulties with pace.  The ALJ appropriately accommodated the limitation by restricting Goble to simple, unskilled work.  *See Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009); *Sims v. Barnhart*, 309 F.3d 424, 431 (7th Cir. 2002).

The ALJ rejected Goble's professed difficulty coping with workplace stressors, and for that conclusion the ALJ failed to build a logical bridge.  The ALJ reasoned that this difficulty is "not well-supported by Psychologist Johnson's own negative mental status examination or the assessed GAF of 58."  But Johnson did not perceive any incompatibility with her examination, and the ALJ did not explain her disagreement.  The ALJ may have penalized Goble for appearing "pleasant and cooperative" to Johnson, but if so this incompatibility is the same unsupported finding discussed in the credibility analysis.  Goble earlier stated in a separate functional report that she handles stress "ok" and had no problems changing routine, but it is unclear to what extent the ALJ relied on that evidence.  Furthermore, although an ALJ is not required to determine the extent of a claimant's disability based on her GAF score, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), in this case the ALJ instead relied on a misunderstanding of the GAF score.  A GAF score of 58 suggests moderate difficulties in occupational functioning, and a score below 51 indicates a possible inability to keep a job.  AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 32-34 (Text Revision, 4th ed. 2000).  Therefore the GAF score is not inconsistent with difficultly tolerating stress but rather suggests someone who may be barely above the level of being able to work or live independently.

We therefore REVERSE the denial of disability benefits and REMAND for further consideration by the agency.