NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 6, 2010
Decided November 29, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

DIANE P. WOOD, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

No. 10-1707

| | |
|---|---|
| BILLY MCCURRIE, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:09-cv-03371 |
| MICHAEL J. ASTRUE, | Amy J. St. Eve, |
| Commissioner of Social Security, | *Judge*. |
| *Defendant-Appellee.* | |

**O R D E R**

Billy McCurrie applied for supplemental disability insurance benefits, claiming disability due to a degenerative condition affecting his back, legs, and hands. The Social Security Administration denied his claim after an administrative law judge (ALJ) declared McCurrie's impairments to be severe but not disabling. The district court upheld the Commissioner's denial of benefits and McCurrie appeals.

McCurrie filed this third application for supplemental security income in August 2005, claiming disability ultimately attributable to degenerative back problems related to a

1989 work-related accident. At a hearing before an ALJ in November 2007, he alleged that his symptoms included low-back, hand, and leg pain as well as intermittent grip and mobility issues. At the time of his hearing, McCurrie was 54 years old, had a 10th-grade education, and had previous experience as an unskilled laborer, including work as a janitor.

The medical records McCurrie provided in support of his application extend back to January 2002, when state agency doctors evaluated him in response to an earlier disability application. One doctor, an orthopedist, noted that an x-ray of McCurrie's back showed mild degenerative changes but no compression fractures. Based on this examination, state agency doctors concluded that McCurrie could frequently lift 25 pounds, and could stand, walk, or sit for six hours a day—a finding consistent with the ability to perform light work.

The medical records from 2002 thru 2007 are sporadic and consist largely of doctors' notes from multiple emergency room visits. Though several examinations cite back tenderness, doctors who examined McCurrie during this period generally found him to have a full range of spinal motion and normal neurological exam results. An x-ray taken of McCurrie's lumbar spine during this period did show some degenerative facet joint disease and joint space narrowing, but doctors characterized these results as normal. ER doctors' notes during this period also reflect one visit where McCurrie's blood-alcohol level was more than three times over the legal limit for driving a vehicle in Illinois. He explained the high reading, not very convincingly, by saying he only consumed a small quantity of beer that day. On two other visits to the ER he sought only shelter and left without treatment.

In April 2007, McCurrie visited a nurse practitioner for a physical. The nurse practitioner also found that McCurrie had a normal range of motion and strength in all four extremities with no joint pain. McCurrie complained of pain with movement only in the upper right extremity.

That same month, Dr. James Elmes, an orthopedist, examined McCurrie at the ALJ's request. In recounting his medical history, McCurrie told Elmes that his earlier x-rays (which he did not present to Elmes for review) revealed that he had a healed vertebral fracture. McCurrie described his back pain as usually ranging between 7 and 10 on a 0-to-10 scale. McCurrie also described a 3-year history of hand pain with pain intensity between 4 and 7 on a similar scale. Elmes noted McCurrie's statement that he could sit for an hour, walk three blocks, and stand for half an hour to an hour. He could lift up to 15 and pull up to 17 pounds.

Elmes's physical examination revealed a "slightly antalgic," but otherwise "normal heel-to-toe gait." McCurrie complained of pain on heel and toe standing and on walking while leaning on a counter for support. Elmes found no significant muscle atrophy, strong

motor function, and symmetrical deep tendon reflexes. The examination did reveal some sensory defects. McCurrie exhibited a slightly reduced range of spinal and knee motion and he displayed some back and mild neck tenderness. Elmes, however, characterized McCurrie's fine motor coordination as "fairly normal." McCurrie performed practical tasks easily, but reported that his hands cramped up after a few minutes of writing. McCurrie's range of motion in the shoulders, elbows, and wrists was normal, and his grip strength was 55 pounds on the right and 35 pounds on the left. Elmes indicated McCurrie could reach, handle, finger, and feel only occasionally.

In September 2007, McCurrie visited the Fantus Clinic. The doctor examining him there noted reduced muscle strength and neurological complaints, but provided no treatment.

At his hearing, McCurrie testified that he was unable to work because of low back, hand, and leg pain. He also testified that he could only walk two or three blocks before having to sit and rest and that, though it was not prescribed by a doctor, he found it necessary to use a cane for four years because his legs often "gave out" beneath him (he cited 20 incidents over 6 years). He characterized his arm pain as "constant" and testified that his hands and fingers would occasionally seize and "spread out," requiring hour-long breaks before subsiding. The ALJ questioned McCurrie about several credibility issues, including his alcohol use, occasional shelter-seeking behavior, sporadic work history, discrepant accounts of his initial back injury, and unreliable testimony regarding the testing McCurrie had undergone.

The testimony of a medical expert at the hearing, Dr. Ronald Semerdjian,[1] focused in part on the distinction between the limitations supported by available objective medical evidence, and the limitations that required reliance on McCurrie's subjective testimony. In particular, the ALJ asked Semerdjian to assess which of Dr. Elmes's findings were supported by objective evidence and which relied primarily on McCurrie's subjective reports. Semerdjian concluded that, considering the available objective evidence alone, McCurrie was capable of light work; if McCurrie's subjective testimony was believed, however, he probably was not. Semerdjian also stated that the available objective evidence did not support the need for a cane despite McCurrie's claim that he needed one. Without further testing, Semerdjian testified that he could not be sure about the effects of the degenerative changes in McCurrie's spine.

---

[1] Dr. Semerdjian is board-certified in internal medicine, but not an orthopedist.

Semerdjian also testified that the imaging studies in the administrative record were inconsistent with McCurrie's assertions that he had fractured his back. Semerdjian emphasized that the available imaging studies "just show[ed] degenerative joint disease, which can be consistent with age" with relatively normal neurological findings. Semerdjian stated that balancing and stooping might be affected based on these objective findings, but that there should be no additional manipulative limitations.

Finally, a vocational expert testified that an applicant like McCurrie—who has limited education and is 54 years of age—could do a range of light work including housekeeping, general assembly, and simple inspection work. The need to use a cane or the inability to use hands occasionally, however, would eliminate those jobs. The VE also testified that if McCurrie were limited to carrying 15 pounds or could stand only up to an hour, he would be limited to sedentary work, likely directing a finding of disability given McCurrie's profile.

The ALJ proceeded through the five-step sequential evaluation process, 20 C.F.R. § 416.920(a)(4), concluding that McCurrie was not disabled. He found that McCurrie had not engaged in substantial gainful activity (step one) and had "severe" impairments including "hypertension, lumbar arthritis, history of remote trauma and alcohol abuse" (step two), but that McCurrie's condition did not medically equal any listing (step three). *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The ALJ found that McCurrie had the residual functional capacity to perform light work. 20 C.F.R. § 416.967(b). Because McCurrie did not have any past relevant work (step four), *see* 20 C.F.R. § 416.965, the ALJ proceeded to the final step of the determination process and considered whether a significant number of jobs existed in the economy that McCurrie could perform given his limitations (including age, education, work experience and functional limitations). The ALJ noted that McCurrie was closely approaching advanced age,[2] 20 C.F.R. § 416.963, had limited education, 20 C.F.R. § 416.964, and had no relevant past work, 20 C.F.R. § 416.968.[3] Based on the vocational expert's testimony, the ALJ concluded that a significant number of jobs existed in the economy that McCurrie could perform, and that McCurrie was not disabled as defined by the SSA and was, therefore, not entitled to benefits.

In determining McCurrie's limitations, the ALJ found McCurrie's subjective testimony less than credible, citing a number of factors including McCurrie's poor work

---

[2] With people living so much longer today, and baby boomers beginning to turn 65 next year, the term "approaching advanced age" is probably due for a makeover.

[3] As McCurrie notes in his brief, a limitation to sedentary work would direct a finding that he was "disabled." *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 201.09.

record, his multiple disability applications, and his otherwise discrepant hearing testimony. The ALJ gave Elmes's opinion limited weight, finding it inconsistent with the underlying clinical findings and earlier unremarkable examinations, and noting that Semerdjian's testimony supported this conclusion.

In September 2008, some nine months after the ALJ issued his decision and while the case was before the Appeals Council, McCurrie underwent an electromyography (EMG) test; McCurrie submitted the results to the Appeals Council. The Appeals Council declined to overturn the ALJ's decision, and McCurrie sought review in the district court, asking, in part, that the court remand his case to the Commissioner for consideration of the new evidence. The district court affirmed the SSA's decision, however, rejecting the new evidence as immaterial because it postdated the ALJ's decision by more than 9 months and did not contain analysis relevant to McCurrie's condition during the period before the ALJ's decision.

McCurrie presents three primary arguments on appeal, arguing that: (1) the ALJ's credibility determination was patently wrong, (2) the ALJ improperly discredited Dr. Elmes's opinion, and (3) the district court erred by failing to remand the case for consideration of new, material evidence under sentence six of 42 U.S.C. § 405(g).

McCurrie first argues that the ALJ erred by refusing to credit his testimony regarding his physical limitations and that, by so doing, the ALJ violated his responsibility to conduct a thorough credibility assessment under Social Security Regulation 96-7p. McCurrie primarily faults the ALJ for failing to assess each of his self-reported symptoms, specifically citing the ALJ's failure to directly address the credibility of McCurrie's self-reported hand-cramping and mobility problems.

But the ALJ need not have conducted the point-by-point credibility assessment McCurrie urges, *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (stating that an ALJ need not specify which of a claimant's statements were incredible); he need only consider the relevant evidence, compare the consistency of McCurrie's testimony against the objective record and ground his credibility finding in the medical evidence, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). The ALJ's decision not to focus on the exact testimony McCurrie prefers does not render his assessment "patently wrong." *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

Under this deferential standard, the ALJ's credibility assessment was more than sufficient. The ALJ cited several statements McCurrie made at his hearing that were ultimately refuted by the record, and the government correctly notes that McCurrie leaves

the findings the ALJ did make virtually unchallenged on appeal. At the hearing, the ALJ probed McCurrie's truthfulness by challenging him on various parts of the record. For example, at his hearing McCurrie denied drinking more than a half-pint of beer before his July 2005 visit to the ER, but his blood-alcohol level (three times the legal limit) made that claim too hard to believe. Similarly, McCurrie testified that he never sought shelter at the ER, but the record reflects at least two 2005 ER visits in which McCurrie sought only shelter. In addition, the ALJ noted that McCurrie's work and earnings history was sporadic well before 1980, more than 10 years before his back injury occurred in 1989, *see* 20 C.F.R. § 416.929(c)(3) (stating that ALJs may take account of work history when evaluating a claimant's credibility); *Simila*, 573 F.3d at 520 (reasoning that declining earnings before the onset of a claimant's alleged disability could support a lack of effort to find work and diminish the claimant's credibility). The ALJ also points to discrepancies in the record regarding the nature and severity of McCurrie's initial back injury—a 2002 examination appeared to belie his statement that he had experienced a compression fracture of the spine.

McCurrie next argues that the ALJ erred by rejecting the opinion provided by Dr. Elmes, an examining doctor and orthopedic specialist, in favor of that of Dr. Semerdjian, who was neither, without grounding his rejection in the factors outlined in 20 C.F.R. § 416.927(d). *Craft*, 539 F.3d at 676.

McCurrie is correct that the ALJ ultimately assigned limited weight to Elmes's opinion, but he did so in compliance with his obligations. Though, as McCurrie argues, ALJs generally afford greater weight to examining doctors and specialists, 20 C.F.R. § 416.927(d)(1), (d)(5), they also must assess the supportability and consistency of expert opinions, *id.* § 416.927(d)(3), (4). *See id.* § 404.1527(d), (f); *Simila*, 573 F.3d at 515. Where, as here, the claimant's credibility was at issue, ALJs must also assess the degree to which medical opinions are based on objective medical evidence and not solely a claimant's subjective assertions. *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ did not merely reject Elmes's opinion in favor of Semerdjian's, as McCurrie argues; rather, he used Semerdjian as a resource to evaluate the range of conclusions supported by objective medical evidence and the range supported only by McCurrie's subjective reports. Semerdjian's testimony permitted the ALJ to assign relative weight to all the available medical evidence in light of the ALJ's assessment of McCurrie's credibility. Relying on Semerdjian's testimony, the ALJ concluded that Elmes's opinion was an outlier given the objective record. Semerdjian testified that Elmes's opinion was inconsistent with other medical findings in the record and was not supported by objective evidence in the record. Semerdjian testified that the objective medical record did not support a finding that McCurrie's condition met any listing, and that the objective record did not support virtually any limitation on McCurrie's physical capabilities. Semerdjian likewise testified that no

objective medical evidence in the record supported McCurrie's claim of back fracture, and no x-rays or other imaging reports were made available to Elmes for his examination of McCurrie. The ALJ's rejection of Elmes's opinion in light of this testimony was not unreasonable.

Finally, McCurrie renews his argument that the district court should have remanded the case under sentence six of 42 U.S.C. § 405(g) for consideration of the new neurological testing evidence he submitted while his case was before the Appeals Council. But though sentence six of 42 U.S.C. § 405(g) authorizes federal courts to remand a case to the Commissioner where "there is new evidence which is material and [] there is good cause for the failure to incorporate such evidence into the record in a prior proceeding," 42 U.S.C. § 405(g), the district court's decision here not to remand was correct. The parties do not dispute that the evidence is "new" or that McCurrie had good reason for not submitting it before the ALJ reached his decision—McCurrie wasn't able to get the test done until months after the decision. *Schmidt v. Barnhart*, 395 F.3d 737, 741-42 (7th Cir. 2005). But whether the evidence is material is another matter; the district court here reasonably found the test results immaterial because they post-dated the ALJ's decision by more than 9 months and because the accompanying notes spoke only to McCurrie's then-current condition rather than his condition during the pre-decision period. *See* 20 C.F.R. § 404.970(b); *Getch v. Astrue,* 539 F.3d 473, 484 (7th Cir. 2008).

For these reasons, the judgment of the district court is AFFIRMED.